JAMES LEE JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82263. Promulgated January 21, 1938.

*Stanley S. Waite, Esq.*, and *Abraham Lowenhaupt, Esq.*, for the petitioner.

*B. H. Neblett, Esq.*, and *H. F. Noneman, Esq.*, for the respondent.

OPINION.

MURDOCK: The law is well settled that transactions such as this must be closely scrutinized. But here careful scrutiny fails to reveal any justification for denying the loss. The Investment Co. was a separate taxpayer from the petitioner, regardless of the extent to which he controlled it. It actually bought the stock, paid for it, became the owner, and continued to be the owner. The price was right. There was no subsequent reacquisition by the petitioner or option or agreement to acquire. There is nothing to indicate that the wife did not fully benefit from her interest in the corporation acquired with funds given her by her husband. The natural inference is the other way. The petitioner took no undue advantage of his power to control the purchaser. The fact that he organized or used the corporation to serve his purpose of minimizing his taxes becomes immaterial. The petitioner, as a taxpayer, made an actual bona fide sale to another taxpayer and sustained a loss which he is entitled to deduct. *Seymour H. Know*, 33 B. T. A. 972; *Marjory Taylor Hardwick*, 33 B. T. A. 249; *Edwards Securities Corporation*, 30 B. T. A. 918; affd., 83 Fed. (2d) 1007; *James E. Wells*, 29 B. T. A. 222; *David Stewart*, 17 B. T. A. 604. See also the following cases, which hold generally that deductions are allowed on sales to or by

closely held corporations where no exceptional circumstances justify disregarding the separateness for tax purposes of the stockholders and their corporations, where the price was fair, and where no plan for reacquisition by the seller appeared, regardless of the fact that the sale may have been for the purpose of minimizing taxes. *Rands, Inc.*, 34 B. T. A. 1094; *Ralph Hochstetter*, 34 B. T. A. 791; *William H. Albers*, 33 B. T. A. 373; *A. S. Eldridge*, 30 B. T A. 1322; affd., 79 Fed. (2d) 629; *Jones* v. *Helvering*, 71 Fed. (2d) 214; *Commissioner* v. *McCreery*, 83 Fed. (2d) 817. Nor is the gift to the wife fatal to the contention of the petitioner. *Thomas W. Behan*, 32 B. T. A. 1088; affd., 90 Fed. (2d) 609.

The new corporation continued to exist. It had at least one other transaction. The wife had a substantial interest in it different from that of her husband. The steps taken and the reality of the corporation can not be disregarded. Cf. *Gregory* v. *Helvering*, 293 U. S. 465.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TURNER dissents.

---

ARNOLD, dissenting: I am unable to agree with the majority opinion in this case and think that the cases there cited are distinguishable on their facts and are not controlling here.

While there is no doubt that the Eleanor Investment Co. was incorporated under the Missouri law as a business corporation and the requisite forms of such a corporation were complied with, the record clearly establishes that it was not organized for the purpose of carrying on a business and in fact did not carry on a business, but was organized and used by petitioner as a device solely for the purpose of establishing a tax loss by transferring to it stock over which he did not intend to relinquish dominion and control and which he would not have sold to outside parties.

Petitioner testified on cross-examination:

Q. Now, is it not a fact, Mr. Johnson, that you had no intention of allowing these stocks to get out of the Johnson family?

A. Mr. Neblett, at the time the corporation was formed I had no intention of selling those stocks to somebody else, and at the present time nothing has come up and I can't say about the future.

Q. Is it not a fact that if the corporation had not been set up and vehicle for conveying the stocks to Mrs. Johnson didn't exist, you would not have made sale of those stocks?

A. That's correct.

These facts bring this case squarely within the principle laid down in *Gregory* v. *Helvering*, 293 U. S. 465. There, it was earnestly contended by the taxpayer that since every element of organization re-

quired by the statute had been complied with a statutory reorganization was effected. The corporation was organized and utilized solely for the purpose of bringing the transaction within the reorganization provisions of the statutes to evade tax liability. In its decision the Supreme Court emphasized the fact that if "a reorganization in reality was effected within the meaning" of the statute the purpose to thereby escape taxation would be disregarded; "but the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended." The Court pointed out:

When subdivision (B) speaks of a transfer of assets by one corporation to another, it means a transfer made "in pursuance of a plan of reorganization" (section 112 (g)) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either, as plainly is the case here. Putting aside, then, the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred, what do we find? Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. It was brought into existence for no other purpose; it performed, as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death.

In these circumstances, the facts speak for themselves and are susceptible of but one interpretation. The whole undertaking, though conducted according to the terms of subdivision (B), was in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else. The rule which excludes from consideration the motive of tax avoidance is not pertinent to the situation, because the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose.

Here, as in the *Gregory* case, there was no business or corporate purpose and the sole object sought to be accomplished was not to organize a business corporation, but to transfer a parcel of corporate shares according to a preconceived plan to the corporation so organized in order to effectuate a tax loss. Here, as there, there was never any intention of creating a corporation to engage in business; the intention was to create a tool to be used by petitioner in establishing a tax loss and the corporation so organized "performed, as it was intended from the beginning it should perform, no other function." Here, as in the *Gregory* case, the transaction on its face lies outside the plain intent of the statute. Cf. *Electrical Securities Corporation*, 34 B. T. A. 988; affd., *Electrical Securities Corporation v. Commissioner*, 92 Fed. (2d) 593; *Helvering v. Elkhorn Coal*

*Co.*, 95 Fed. (2d) 732; *Commissioner* v. *Riggs*, 78 Fed. (2d) 1004; *Commissioner* v. *Dyer*, 74 Fed (2d) 685; certiorari denied, 296 U. S. 637; *United States* v. *Lehigh Valley Railroad Co.*, 220 U. S. 257; *Miller & Lux, Inc.* v. *East Side Canal & Irrigation Co.*, 211 U. S. 293.

In *Electrical Securities Corporation* v. *Commissioner*, *supra*, the court said:

> * * * The transactions were not a sham in the sense that a contract made in jest is a sham, creating no obligations whatever. Here as well we do not doubt that the United Gas Improvement shares actually passed to and out of the Diselin Corporation, a lawfully created corporate person, capable like any other such, of receiving, holding and transferring any kind of property. But that company, however unassailable its existence and its powers, must have been one which Congress meant to exempt by § 112, and it does not in the least follow that it was, because it was a regularly constituted juristic person. The purpose of the section is apparent; it was meant to allow businesses to be reconstructed when the resulting interests were substantially unchanged; but it presupposed that the enterprises were in fact businesses; financial, commercial, industrial and the like. The avoidance or suspension of taxes is not a business. * * *

If the avoidance or suspension of taxes is not a business and a corporation organized and used for that purpose is not effective to suspend taxes under the reorganization provisions of the statute, for the same reason a corporation so organized should not be effective to establish a loss under the deduction provisions of the statute.

While it is true the Eleanor Investment Co. later purchased 10 first mortgage 6 percent bonds of the Vicksburg Bridge & Terminal Co. for $4,420, this purchase was not made until after September 14, 1934, when it was developed in a deposition given by petitioner that the corporation had done no other business and thereafter the bonds were purchased and the purchase ratified by the board of directors January 20, 1935. In the same deposition petitioner was asked:

> Q. What was the purpose of creating this corporation?
> A. Primarily, to show a tax loss. To show a loss for tax purposes.

To permit an individual to create a corporation which he controls and use it for the sole purpose of circumventing a statute is to put him in a preferred class not intended by the statute and not justified by any theory of corporate fiction. While it is not questioned that one in control of a corporation through stock ownership has the right to use such control for the purpose of a bona fide separate administration of the corporation's business, it is not to be supposed that he may so abuse such power in his personal dealings with the corporation as to accomplish by indirection a result contrary to the intendment of the statute. Cf. *United States* v. *Lehigh Valley Railroad Co.*, *supra.* Losses to be deductible must be realized. A mere paper loss based on legal technicalities is not enough

and an attempt to evade the payment of income taxes by a purported sale of property which does not result in a realized loss is without both the letter and the spirit of the law. Cf. *Schoenberg* v. *Commissioner*, 77 Fed. (2d) 446. It is well settled that the mere fact that petitioner wanted to establish a loss for income tax purposes would not prevent the deduction of a loss actually sustained, cf. *United States* v. *Isham*, 17 Wall. 496, 506; *Gregory* v. *Helvering, supra*, but the sale must be actual and the taxpayer must intend to part not only with the title to the property but the dominion and control over it and that intention must be consummated. Cf. *Commissioner* v. *Behan*, 90 Fed. (2d) 609; *Commissioner* v. *Dyer, supra; James Nicholson*, 32 B. T. A. 977; affd., *Nicholson* v. *Commissioner*, 90 Fed. (2d) 978. Petitioner, through his control of Eleanor Investment Co., could at any time cause it to be dissolved, the assets distributed in kind, and thus repossess all the stock transferred except the shares which his wife received through his gift to her of $49,900 without sustaining any loss whatever. .

Taxation is a practical matter and deals in actualities. To recognize a loss on a transaction when in fact a loss was not realized, results in an inequitable distribution of the tax burden which was never intended by Congress.

Hill and Harron agree with this dissent.