**HELVERING, Com'r of Internal Revenue, v. JOHNSON.**

No. 11407.

Circuit Court of Appeals, Eighth Circuit.

June 1, 1939.

F. E. Youngman, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Stanley S. Waite, of St. Louis, Mo. (Lowenhaupt, Waite & Stolar, of St. Louis, Mo., on the brief), for respondent.

Before SANBORN and THOMAS, Circuit Judges, and SULLIVAN, District Judge.

SANBORN, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals (37 B.T.A. 155) holding that there was no deficiency in income taxes of the respondent for the year 1932.

The question submitted to the Board was whether in 1932 the respondent made an actual bona fide sale of 10,000 shares of the capital stock of the International Shoe Company, which had cost him $620,000, to the Eleanor Investment Company, a Missouri corporation, for $240,000, thereby sustaining a loss of $380,000. In his return for that year, the respondent took a deduction for this alleged loss. The Commissioner disallowed the deduction, which resulted in a deficiency of $35,488.16. The respondent appealed to the Board, and the Board reversed the Commissioner.

The issues of fact having been resolved by the Board in the respondent's favor, the question before this Court is whether the ultimate finding of the Board is sustained by substantial evidence. In considering that question, we think that all facts that the respondent's evidence reasonably tends to prove must be assumed to be established and all inferences fairly deducible from such facts must be drawn in his favor, and that effect must be given to the rule that issues depending upon the credibility of witnesses and the weight of evidence are to be decided by the triers of the facts. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 78 L.Ed. 492; Svenson v. Mutual Life Ins. Co., 8 Cir., 87 F.2d 441, 442; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 439; Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 377; Conrad & Co. v. Commissioner, 1 Cir., 50 F.2d 576, 579. The administrative findings of the Board on issues of fact are to be accepted as conclusive if the evidence was legally sufficient to sustain them. Phillips v. Commissioner, 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289; Commissioner v. Behan, 2 Cir., 90 F.2d 609, 611. This Court is without power, in reviewing proceedings of the Board, to make any findings of fact. The function of the reviewing court is to decide whether the correct rule of law was applied to the facts found, and whether there was substantial evidence to support the findings of the Board. Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343.

The only witnesses who testified in the proceedings before the Board were the respondent and two of the attorneys whom he had consulted with reference to the transaction which is questioned.

The facts, as disclosed by the evidence and as found by the Board, are, in substance, as follows:

The respondent, a resident of Kirkwood, Missouri, in 1932 owned 58,000 shares of the capital stock of the International Shoe Company. The market price of the stock was then less than what it had cost him. He wished to take a loss on some of his stock in order to reduce his income tax liability for the year 1932. He also wished to make a gift to his wife. He had previously contemplated setting up a separate estate for her. He consulted his attorney with reference to these matters. He and his attorney conferred with other attorneys specially skilled in tax matters. The attorneys advised him that the plan adopted by him to accomplish the two purposes which he had in mind was proper and legal. He borrowed $100,000 at a bank, with which he procured three cashier's checks, two for $49,900 each, payable one to himself and the other to his wife. The third cashier's check was for $200, payable to Fielding H. Childress.

The respondent, his wife, and Mr. Childress on December 27, 1932, organized the Eleanor Investment Company, of which they became officers and directors. This corporation was authorized to deal in stocks, bonds, securities and real estate. Its capital stock consisted of 10,000 shares aggregating $100,000. The respondent gave to his wife the cashier's check for $49,900 which was payable to her, and gave to Mr. Childress the $200 check which he had procured for him. The three cashier's checks were then turned over to the corporation in exchange for its

stock. The respondent's wife received a certificate for 4990 shares which she placed in her safety deposit box, to which she alone had access; 4990 shares, were issued to the respondent, and 20 shares to Mr. Childress. The respondent's wife became vice-president of the Investment Company, the respondent himself became secretary and treasurer, and Mr. Childress was the president.

The respondent then offered to sell to the Investment Company 10,000 shares of his stock in the International Shoe Company (for which he had paid $62 a share) for $24 a share, the then market price, and to accept $99,000 in cash and the promissory note of the Investment Company for $141,000 secured by a pledge of the Shoe Company stock. This offer was accepted, and the respondent applied the $99,000 which he received from the Investment Company upon his indebtedness to the bank. The stock of the Shoe Company was duly transferred to the Investment Company and the dividends thereafter received thereon by the Investment Company were deposited in the bank to its account. A part of these dividends was used to pay taxes and expenses of the Investment Company. The remainder was applied to the payment of interest and the reduction of principal of the $141,000 note of the Investment Company held by the respondent. The note was periodically extended until December 28, 1935. It was then extended for thirty days, and interest was reduced from six per cent to three per cent. The market price of the Shoe Company stock had in the meantime increased, and the respondent returned 5,000 shares of the pledged stock to the Investment Company. The balance then due upon the note was $114,000. The respondent sold the note to the First National Bank of St. Louis, and transferred to it the 5,000 shares of stock which he still held as collateral. The Investment Company each year filed State and Federal income tax returns and paid taxes upon the dividends received by it. The 10,000 shares of Shoe Company stock have, ever since their acquisition by the Investment Company, stood in its name upon the books of the Shoe Company. They have never been reacquired by the respondent. Aside from the purchase of ten bonds of the Vicksburg Bridge & Terminal Company for $4,420 in 1935, no other business was done by the Investment Company. The respondent's wife still owns her stock in that Company. The respondent would not have sold the 10,000 shares of Shoe Company stock to the public. One of his purposes in forming the Investment Company—and perhaps his primary purpose—was to reduce his tax liability for the year 1932.

In its opinion the Board says: "The law is well settled that transactions such as this must be closely scrutinized. But here careful scrutiny fails to reveal any justification for denying the loss. The Investment Co. was a separate taxpayer from the petitioner [respondent here], regardless of the extent to which he controlled it. It actually bought the stock, paid for it, became the owner, and continued to be the owner. The price was right. There was no subsequent reacquisition by the petitioner or option or agreement to acquire. There is nothing to indicate that the wife did not fully benefit from her interest in the corporation acquired with funds given her by her husband. The natural inference is the other way. The petitioner took no undue advantage of his power to control the purchaser. The fact that he organized or used the corporation to serve his purpose of minimizing his taxes becomes immaterial. The petitioner, as a taxpayer, made an actual bona fide sale to another taxpayer and sustained a loss which he is entitled to deduct."

Four members of the Board dissented. We quote the following from the dissenting opinion: "While there is no doubt that the Eleanor Investment Co. was incorporated under the Missouri law as a business corporation and the requisite forms of such a corporation were complied with, the record clearly establishes that it was not organized for the purpose of carrying on a business and in fact did not carry on a business, but was organized and used by petitioner as a device solely for the purpose of establishing a tax loss by transferring to it stock over which he did not intend to relinquish dominion and control and which he would not have sold to outside parties."

The contentions of the Commissioner are, in effect, these:

(1) That it appears from the evidence as a matter of law that there was no bona fide sale of stock of the Shoe Company made by the respondent in 1932.

(2) That if the transaction was bona fide, it constituted an exchange of stock of one corporation for the stock of another corporation, upon which a loss was not

recognized under the Revenue Act of 1932, c. 209, 47 Stat. 169, 196, § 112(b) (5) and (e), 26 U.S.C.A. § 112(b) (5), (e).

The second contention was not presented to or considered by the Board. It is based upon the theory that the Shoe Company stock was not purchased for cash, but was exchanged for the Investment Company stock. This is contrary to the finding of the Board that the stock of the Investment Company was paid for in cash, which finding, having evidence to sustain it, is conclusive upon this Court.

The first contention is the only one which merits discussion.

It is conceded, as it must be, that a taxpayer has the legal right to decrease the amount of what would be his taxes or avoid them by means which the law permits. Superior Oil Co. v. Mississippi, 280 U.S. 390, 395, 396, 50 S.Ct. 169, 74 L.Ed. 504; Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Iowa Bridge Co. v. Commissioner, 8 Cir., 39 F.2d 777, 781; Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214, 217; Commissioner v. Behan, 2 Cir., 90 F.2d 609, 611. But a mere subterfuge, device or contrivance for the avoidance of taxes, adopted in order to disguise the true character of a transaction and to make it appear to be something that it is not, will not serve its intended purpose. Its form will be disregarded. Thus, a scheme to transfer a parcel of corporate shares to a taxpayer, although taking the form of a corporate reorganization, will be treated as what it actually is and not what it pretends to be, Gregory v. Helvering, supra, 293 U. S. page 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Electrical Securities Corporation v. Commissioner, 2 Cir., 92 F.2d 593, 595; Helvering v. Elkhorn Coal Co., 4 Cir., 95 F.2d 732, 734; and where a pretended sale of stock is made under a plan which contemplates the reacquisition of the stock sold or its substantial equivalent, the loss allegedly sustained is not deductible, because not actually suffered. Commissioner v. Dyer, 2 Cir., 74 F.2d 685, 686; Shoenberg v. Commissioner, 8 Cir., 77 F.2d 446, 449; Rand v. Helvering, 8 Cir., 77 F. 2d 450, 451.

The distinctions between the cases just cited and others which were relied upon by the Commissioner and this case are that here there was, as found by the Board, an actual sale of stock by the respondent to the Investment Company; that the respondent actually parted with the stock, with no intention of reacquiring it and has never reacquired it; that the corporation which he caused to be formed was not created for the sole purpose of taking over the stock from the taxpayer in order that he might take a deduction for a loss and at the same time retain the right to recapture the stock sold; and that, while he owned one-half of the stock of the Investment Company and was permitted to control that Company, it had a purpose in life aside from enabling him to take a loss amounting to no more than the actual depreciation in value of the 10,000 shares of Shoe Company stock which he transferred to it.

That the respondent and the Investment Company were distinct entities is not questioned. Burnet v. Clark, 287 U.S. 410, 415, 53 S.Ct. 207, 77 L.Ed. 397; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 419, 53 S.Ct. 198, 77 L.Ed. 399; Klein v. Board of Supervisors, 282 U.S. 19, 24, 51 S.Ct. 15, 75 L.Ed. 140, 73 A.L. R. 679; Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214, 217. The corporation has remained in existence. It has retained the Shoe Company stock which it acquired in 1932. The number of the stockholders of the Investment Company is unimportant, Cannon Manufacturing Co. v. Cudahy Co., 267 U.S. 333, 337, 45 S.Ct. 250, 69 L.Ed. 634; Burnet v. Commonwealth Improvement Co., supra, 287 U.S., page 419, 53 S. Ct. 198, 77 L.Ed. 399, except as it shows that the Investment Company was not organized merely for the purpose of enabling the respondent to take a loss and still retain the beneficial ownership of the stock sold. His wife acquired rights as a stockholder of the Investment Company which could not be ignored by him. Eisner v. Macomber, 252 U.S. 189, 209, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. By the sale of the stock of the Shoe Company to the Investment Company, the respondent was divested of all property rights in the stock in return for the proceeds of the sale. See Commissioner v. Behan, 2 Cir., 90 F. 2d 609, 611.

In the cases of Shoenberg v. Commissioner, supra, 77 F.2d 446, and Rand v. Helvering, supra, 77 F.2d 450 which are relied upon by the Commissioner, this Court sustained the determinations of the Board that the transactions involved in those cases did not constitute bona fide sales, and that the taxpayer suffered no actual loss. In this case we are asked to

reverse the Board for determining that the transaction here involved was a bona fide sale and resulted in an actual loss. We think that, under the evidence, that issue of fact was for the Board to determine.

[9-11] Even in the light most favorable to the Government, this case appears to present a situation where, the evidence being undisputed, fair-minded men may honestly draw different conclusions. In such a situation a reviewing court will not substitute its judgment for that of the fact finding body, but will accept the ultimate fact as found by it. Richmond & Danville R. Co. v. Powers, 149 U.S. 43, 45, 13 S.Ct. 748, 37 L.Ed. 642; Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L. Ed. 720; United States v. Gamble-Skogmo, Inc., 8 Cir., 91 F.2d 372, 374. We are not unaware of the rule that an ultimate finding of the Board of Tax Appeals which is a conclusion of law or a determination of a mixed question of law and fact stands upon a different basis than its findings of primary, evidentiary or circumstantial facts, and that, upon review of such an ultimate finding, the reviewing court may substitute its judgment for that of the Board. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 491, 57 S.Ct. 569, 81 L.Ed. 755. We do not regard the ultimate finding of the Board in this case as either a conclusion of law or the determination of a mixed question of law and fact. But if it were to be so regarded, since this Court as a court of review must accept the evidentiary facts as found by the Board and can make no findings of its own, we think it may substitute its judgment for that of the Board only when the Board's ultimate finding is contrary to its evidentiary findings or is based upon a clear misapplication of the law to the evidentiary findings. Certainly a determination of an ultimate fact by the Board of Tax Appeals should be entitled to as much respect as the general verdict of a jury of laymen in favor of a taxpayer in an action at law to recover an overpayment of taxes.

We need go no further in this case than to say that we think there was substantial evidence to sustain the Board's findings, evidentiary and ultimate, and that we find no sufficient justification for disturbing the conclusion reached. We regard this case as more closely analogous to Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214, and Smith v. Higgins, 2 Cir., 102 F.2d 456, than to the cases relied upon by the Commissioner. Compare, also, Commissioner v.

Eldridge, 9 Cir., 79 F.2d 629, 102 A.L.R. 500; Commissioner v. McCreery, 9 Cir., 83 F.2d 817; Foster v. Commissioner, 2 Cir., 96 F.2d 130.

The decision of the Board is affirmed.