**BEIM CO. v. LANDY, Collector of Internal Revenue.**

No. 11659.

Circuit Court of Appeals, Eighth Circuit.

Aug. 6, 1940.

Rehearing Denied Sept. 9, 1940.

SANBORN, Circuit Judge, dissenting.

————◇————

Arnold L. Guesmer, of Minneapolis, Minn., for appellant.

Carlton Fox, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before GARDNER and SANBORN, Circuit Judges, and COLLET, District Judge.

GARDNER, Circuit Judge.

Appellant brought this suit to recover $55,031.01 from appellee in his capacity as Collector of Internal Revenue, which amount it was alleged had been exacted from appellant for taxes for the years 1932 and 1933 under Section 104 of the 1932 Revenue Act, 26 U.S.C.A. Int.Rev. Acts, page 508. The lower court made findings of fact and entered conclusions of law sustaining the assessments as made and collected, and entered judgment dismissing appellant's complaint, from which judgment this appeal is prosecuted. The parties will be referred to as they were designated below.

From the detailed and elaborate findings of fact, it appears that in 1925, Nels C. Beim and his wife were the owners of 30 per cent of the common stock of the W. H. Barber Company, a Minnesota corporation, and William H. Barber was the owner of about 60 per cent of the common stock. That company was engaged in the business of handling petroleum products. In January, 1929, Beim entered into a contract to purchase from Barber the latter's stock for $1,000,000, the major part of the purchase price of which was to be paid in equal annual installments.

It was provided by this contract that when Beim had paid $200,000 of the purchase price, Barber would release to him shares of stock at the rate of one share for each $150 subsequently paid. Beim did not have the personal finances to pay for this stock, and anticipated at the time the agreement was entered into that the dividends from the W. H. Barber Company would be sufficient to pay for the principal and interest payments under this purchase contract. During 1929, Beim personally made all the payments called for by his contract, and by January 1, 1930, had made payments in advance of the contract of $165,833.05, and he demanded and received shares of stock on the payment of $150 a share, after the first $200,000 had been paid.

During 1929, some question arose as to the validity of this contract, and as a result a new contract was executed dated April 9, 1930, which in all material respects was similar to the contract of January, 1929. By this second contract Beim was given credit for the payments already made by him on the first contract, which left a balance of the unpaid purchase price of $634,900. Similar provisions were made regarding the release of stock, but it was provided that the seller had the right at all times to retain 51 per cent of the stock until full payment under the contract had been made.

On June 3, 1930, the plaintiff corporation was organized by Beim, his wife, and his attorney. On June 9, 1930, this second contract was assigned to the plaintiff company, which assumed the payment of the unpaid balance due, amounting to $559,900. It also assumed and agreed to pay Beim $165,833.05, which Beim had paid on the purchase price of the stock previous to the transfer of this contract to the plaintiff company. The shares of stock in the plaintiff company were all owned and held by Beim, his wife, and members of his family, with the exception of one qualifying share held by his attorney. Beim and his family owned and held a considerable amount of stock in the Barber Company other than that subject to this contract, and Mrs. Beim had stocks in other corporations, such as utility companies, none of which was transferred or assigned to the plaintiff company, but the only asset or property that the Beim Company ever held or owned was an equity in and the dividends derived from the stock covered by this contract. It had no office, paid no rent, had no furniture or fixtures. The meetings of the corporation were held in the office of Beim's attorney, and it was his office that drew all the minutes and resolutions. The plaintiff company paid no salaries, except what it paid Beim's attorney for conducting meetings. The stock of the plaintiff company was purchased by Beim and his family, either by cash or by the deposit of notes with the plaintiff company. The only income which the plaintiff company had was that paid to it as dividends from the William H. Barber Company. These dividends were then used by the plaintiff company to apply on the stock purchase contract, and no part thereof was divided or distributed to the stockholders. Although under his contract, Beim had the right to have the shares of stock released to him on the basis of $150 a share, provided that the seller retain enough to keep 51 per cent control, at no time during the period did he or the plaintiff company request or receive any of the stock he was entitled to have released under this contract. The total sum of the dividends paid during the years 1932 and 1933, the years covered by this controversy, amounted to $150,595.

The court found that the plaintiff corporation was a mere holding and investment company formed and availed of for the purpose of preventing the imposition of the surtax upon its shareholders, through the medium of permitting its gains and profits to accumulate instead of being divided or distributed. There were other findings which went largely to the question of the intent or purpose prompting the organization of the plaintiff company and the assignment and transfer of the stock purchasing contract to it.

█ The findings of fact are presumptively correct and should not be set aside unless clearly erroneous, and due regard must be given to the opportunity of the lower court to judge of the credibility of the witnesses. Rules of Civil Procedure, 52 (a), 28 U.S.C.A. following section 723c. So far as the findings of the court constitute findings of primary facts as distinguished from conclusions of fact, we are of the view that they are sustained by the evidence and the legitimate inferences which the court might properly draw therefrom.

Section 104 of the Revenue Act of 1932, under which the assessments were made, so far as here applicable, provides as follows:

"(a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof * * *.

"(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax."

The finding by the court that the plaintiff was a mere holding and investment company, and was formed and availed of for the purpose of preventing the imposition of the surtax upon its shareholders, through the medium of permitting the gains and profits to accumulate instead of being divided or distributed, while partaking somewhat of the nature of a conclusion of fact, was, we think, amply sustained by the evidence. No purpose would be served by a recital of the various evidentiary facts and circumstances unerringly pointing to this conclusion. But it is argued by plaintiff that even though it be determined that it was guilty of permitting its gains and profits to accumulate instead of being divided or distributed, yet it is not subject to the tax unless this was done "for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed."

It is pointed out that the plaintiff corporation did not permit its gains and profits to accumulate, but that it applied them on the debt which it had taken over from Beim. By applying its gains and profits to the purchase of this stock, the stockholders of the plaintiff acquired the equivalent of dividends. As the plaintiff company was a mere holding company, created solely for the purpose of enabling Beim and his family to escape the surtax, the family remained owners of the full beneficial interest of the dividends received from the Barber Company. When the Barber Company dividends were turned over to this holding company, the stockholders of that company became the owner of them and entitled to demand their distribution. Instead of distributing them, however, the plaintiff company applied them to the obligation of its stockholders under the stock purchasing contract. It must be remembered that while this contract was assigned to the plaintiff company, Beim was not released from the obligations thereof. This, in effect, was a reinvestment of the dividends on behalf of these stockholders in the assets of the plaintiff taxpayer corporation. Had these dividends not been reinvested, they must inevitably have resulted in an accumulation of profits. The organization of the plaintiff company for the purpose of preventing the imposition of the surtax upon its stockholders was itself an inhibited act, and the very purpose of Congress was to prevent the evasion of income tax by stockholders. The statute provides that the fact that any corporation is a mere holding or investment company "shall be prima facie evidence of a purpose to escape the surtax." In these circumstances, the burden was upon the taxpayer to "show his hand." United Business Corp. v. Commissioner, 2 Cir., 62 F.2d 754.

The sole purpose for the organization of the taxpayer corporation was to take over this purchase contract which Beim had entered into for the acquisition of the Barber stock. Its only substantial source of revenue was the dividends paid on the Barber Company stock, and it was in contemplation of the parties that the payment for that stock was to be made entirely out of these Barber Company dividends. It was used as a conduit through which to pass the dividends and apply them on the contract. Beim was acting upon the advice of tax experts in forming the corporation. But it is argued that conceding this intent and purpose, still the corporation is not subject to the tax unless it be shown that the purpose was accomplished through the medium of permitting its gains and profits to accumulate, instead of being divided or distributed. The investment of these gains and profits constituted, we think, an accumu-

lation within the meaning of this statute. The contract was Beim's contract and his dividends were invested in this stock.

A somewhat similar situation was considered by the Fifth Circuit in Saenger v. Commissioner, 84 F.2d 23, 24. There two brothers sold all their assets and business to a corporation in consideration of a transfer to them of its capital stock. Then each of the brothers organized a wholly owned corporation to take over his one-half of the stock of the original corporation. The Court sustaining a decision of the Board of Tax Appeals, found that the corporation organized by each brother was formed and availed of for the purpose of preventing the imposition of surtaxes. In the course of the opinion it is said: "As things were managed this corporation wholly owned by him declared no dividends itself, but passed to him in the shape of loans the cash coming from the dividends of A. & J., Inc. * * * A corporation formed for the stated purpose or availed of in any tax year for that purpose is subject to the peculiar tax whether or not the purpose be successfully executed. The legislative aim no doubt was to discourage the attempt thus to misuse a corporation as well as to neutralize success. Of course if the corporation fails to have gains and profits to the extent that there is no net income, the tax fails. But the purpose with which the corporation is formed or used determines whether it is within the class thus peculiarly taxed. Being in position to declare dividends and not declaring them is only evidentiary. The evidence here supports the finding that A. D. Saenger, Inc., was in the specially taxed class."

In the instant case, the plaintiff corporation declared no dividends, but it invested the cash coming from the dividends of the Barber Company for the sole benefit of the stockholders of the plaintiff company.

In Almours Securities, Inc. v. Commissioner, 91 F.2d 427, 429, the Fifth Circuit again considered this statute. In that case, a corporation was formed which was a personal holding or investment corporation, formed for the purpose, as in the instant case, of preventing the imposition of surtax upon its stockholders. Its capital stock was issued for securities turned over to it by its stockholders. It received large sums as dividends on these securities, but made no distribution to the stockholders. The earnings, instead of being paid out as dividends, were reinvested by the corporation. The court concluded that the corporation, formed for the purpose of preventing an imposition of surtax, permitted its profits to accumulate, and that it was availed of for the purpose of preventing the imposition of surtax upon its stockholders "through the medium mentioned in section 104 of the Revenue Acts of 1928 and 1932."

As before observed, the dividends received by plaintiff on the Barber stock belonged to plaintiff's stockholders, and if paid to them would have increased their income taxes. They would have been paid to the stockholders but for the intervention of plaintiff, organized by these stockholders for the unlawful purpose of preventing the imposition of surtax. Through this instrumentality, the profits, instead of going directly to the stockholders, were reinvested for them, and this, we think, was tantamount to permitting its gains and profits to accumulate. In such circumstances, we must recognize substance rather than form, and fact rather than fiction.

It follows that the judgment appealed from should be and is affirmed.

SANBORN, Circuit Judge (dissenting).

N. C. Beim contracted to purchase stock in the W. H. Barber Company on the installment plan. If the stock was to be acquired, the installments had to be paid when due. Under the contract of purchase the purchaser, if not in default, was entitled to dividends upon the stock which was subject to the contract. Beim formed a family holding company, which took over the contract, became entitled to receive the dividends, and was obligated to pay the installments. This had the effect of reducing the surtax which Beim would otherwise have had to pay. The company applied upon the installments which fell due under the contract during the years 1932 and 1933 the dividends received from the Barber Company, and no profits and no funds available for dividends accumulated in those years. It is contended, however, that the company was "formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed",

902

and was subject to a fifty per cent tax on income under Section 104 of the Revenue Act of 1932.

That the company was formed for the purpose of preventing the imposition of the surtax upon its shareholders was a permissible finding of fact and is binding on this Court; but I am unable to convince myself that there is evidence that the imposition of the surtax was to be prevented, or was prevented, through the medium of the accumulation by the company of distributable profits. The corporation was organized to do exactly what it did do: receive the dividends on the stock of the Barber Company being purchased; apply those dividends upon the installments provided for in the contract as they fell due; and, after all installments had been paid, distribute gains and profits to shareholders. Article 541, Treasury Regulations 77, promulgated under the Revenue Act of 1932, states: "Section 104 is designed to discourage the formation or use of a corporation for the purpose of preventing the imposition of surtaxes upon its shareholders, through the device of permitting its gains and profits to accumulate instead of being distributed." Section 104 was directed at corporations which were designed or used to prevent, through the accumulation of distributable profits, the imposition of surtaxes upon their shareholders, and not at corporations designed or used to prevent, in some other way, the imposition of such surtaxes. The Beim Company was formed to prevent the imposition of surtaxes, but not in the particular way which would make it liable to the fifty per cent penalty tax. See and compare Corporate Investment Company v. Commissioner, 40 B.T.A. 1155. I can see that every time that the company paid an installment upon the contract for the purchase of the stock, its financial condition was improved and the value of its shares enhanced, but I am unable to see how that gave it accumulated earnings available for dividends. Any debtor's position is improved by the payment of his debts, but this improvement, although it may be attributable to income, would hardly be considered an accumulation of profits. The income of the Beim Company and its obligation to pay installments arose out of the same contract. If the income was its income for purposes of taxation, by the same token the obligation to make payments under the contract was its obligation and was to be taken into consideration in determining its liability for taxes. No shareholder during the years 1932 and 1933 could have compelled the company to make any distribution of dividends. If it had made a distribution to shareholders of its income in those years, it would have had to borrow money or sell stock or assets to meet its obligations. The taxing authorities did not treat this corporation as a sham, a fraud or a mere pretense. It was treated as a bona fide corporation for tax purposes, but liable for the tax imposed by Section 104. In Helvering v. Johnson, 8 Cir., 104 F.2d 140, at page 143, this Court pointed out that a taxpayer has the legal right to decrease the amount of what would be his taxes or avoid them by means which the law permits; and that a corporation for purposes of taxation is an entity distinct from its shareholders.

Since I think that the evidence failed to disclose that the Beim Company was taxable under the particular statute relied upon, I am unable to concur.