## TYSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12922.

Circuit Court of Appeals, Eighth Circuit.

Dec. 20, 1944.

H. M. Stolar, of St. Louis, Mo. (Jacob Chasnoff, Stanley S. Waite, and Lowenhaupt, Waite, Chasnoff & Stolar, all of St. Louis, Mo., were with him on the brief), for petitioner.

Bernard Chertcoff, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Leonard Sarner, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SANBORN, THOMAS, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States determining deficiencies in income taxes of the petitioner for the calendar years 1939 and 1940.

■ The question which this Court is called upon to decide is whether the determination by the Tax Court that what purport to be gifts by petitioner to his wife of certain "cash interests" in his business were not in fact valid and completed gifts, is as a matter of law erroneous. The answer to the question depends, broadly, upon whether there is a rational basis for the conclusion of the Tax Court. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 501, 64 S.Ct. 239. If there is, the conclusion must stand.

The evidentiary facts are not in dispute. It is conceded by petitioner that the Tax Court has stated them accurately in its unreported Memorandum Findings of Fact and Opinion, entered March 31, 1944, in which the Tax Court made the following findings of fact:

"The Commissioner determined deficiencies in petitioner's income taxes for the calendar years 1939 and 1940, in the respective amounts of $1,308.97 and $2,874.84. That part of the deficiency is here in issue which is raised by respondent's inclusion in petitioner's taxable income of amounts of money earned in petitioner's business attributable to certain shares in that business and certain sums of money, which petitioner alleges were the subject of gifts by him to his wife and minor children.

"During the tax years involved here, and for some years prior thereto, petitioner was the sole proprietor of a small loans business, known as 'State Loan Agency', with its principal place of business in East St. Louis, Illinois. He resides in Clayton,

Mo., and filed his income tax returns for the tax years with the collector for the first district of Missouri.

"On January 1, 1938, petitioner executed a certain written instrument, purporting to give to his wife a 'cash interest' of $5,000 in his business. The language of the instrument exclusive of signatures, is as follows:

" 'Know All Men By These Presents:

" 'That I, R. R. Tyson, of the City of Belleville, County of St. Clair, State of Illinois, in consideration of love and affection, hereby give irrevocably assign and set over to my wife Mabel G. Tyson, for her own use forever, a cash interest of $5,000.00 (Five Thousand Dollars) in my licensed Small Loan Business and the said Mabel G. Tyson shall have immediate credit, on the general ledger of the books of the said licensed Small Loan Business, in her own name, for the said sum of $5,000.00 (Five Thousand Dollars) and the said sum shall be immediately charged against my account.'

"Simultaneously, petitioner and his wife executed a written 'Contract and Agreement' which set out the terms and conditions under which petitioner's wife was to advance and loan to petitioner for use in his business certain sums of money. The sum of money which she immediately proposed to lend was that 'cash interest' in the business which was allegedly being given her at that time. No money was actually given her at the time, and none was delivered by her to petitioner for use in his business. The transaction was carried out by making appropriate debits and credits on the books of the State Loan Agency.

"It was provided by this agreement that she was to receive, at the end of each year 'such proportionate share of the net profits of * * * [petitioner's] business as the average daily balance of such monies so advanced and loaned * * * bears to the total capitalization employed in * * * [the] business * * *.' Specific and detailed provision was made for the manner in which the net profits were to be computed, and among the deductions declared allowable for that purpose was a salary for petitioner of not to exceed $6,000 a year. It was further provided that petitioner's wife 'is not to be considered a partner in the * * * business, * * * nor is she to acquire any right, title or interest in or to the good will of

such business, * * * or to the * * * profits from the sale of such business * * * [she] being hereby specifically and definitely limited to the profits accruing from the regular operation and conduct of such business as a going business. And, in no event, * * * is * * * [she] chargeable with any net loss occasioned by the operation of said business.'

"The contract also provided that petitioner's wife 'may withdraw * * * a sum not exceeding * * * $150 * * * once in thirty * * * days, except that it shall be optional with * * * [petitioner] to permit [her] * * * to withdraw all or any part of the sum then standing to [her] credit at any time.'

"Provision was made for the termination of the contract upon six months' written notice by either party to the other.

"On January 15, 1939, and on January 15, 1940, petitioner executed other and similar instruments purporting to assign to his wife 'cash interests' of $4,000 and $5,000, respectively, in his business. The proper entries were made in petitioner's books indicating these transfers.

"Petitioner's wife did not at any time withdraw any money from the account during the taxable years, but, after consultation with her husband, agreed that her alleged share of the net profits which amounted to $1,507 for 1938, $2,781.50 for 1939, and $3,496 for 1940, should be credited to her account on the books of her husband's business.

"Petitioner's wife reported the receipts of the amounts referred to above for 1939 and 1940, and paid the tax thereon. When respondent determined this income to be properly taxable to her husband, petitioner's wife filed claims for refund in order to protect her interests in the event of a final determination in favor of respondent.

"Petitioner's wife did not render any service to petitioner's business during the years involved here, and the income set out above was her only income.

"On August 1, 1939, petitioner, as grantor, executed a trust instrument by which he purported to give irrevocably to his wife, as trustee, the sum of $4,000 for the benefit of his minor daughter until she became 21 years of age (or longer, under some circumstances), at which time the trust was to terminate, and the property and accumulated earnings to be turned over to the beneficiary or to her estate. The trustee was empowered to invest and

reinvest the funds of the trust as she deemed advisable, and specifically to invest them in any finance company in which petitioner is interested. The trustee was given power, in her discretion, to use any part or all of the income derived from such funds, after the payment of the expenses of the trust, for the care, comfort, education and recreation of petitioner's daughter.

"Simultaneously with the execution of this alleged trust instrument on August 1, 1939, petitioner, as manager of the small loans business, and his wife, as trustee, executed a 'trustee's contract', the provisions of which are substantially similar to the 'Contract and Agreement' entered into between petitioner and his wife in her individual capacity, except that the provision relating to withdrawals by the trustee provided that 'it shall be optional with [petitioner] to permit or require said Trustee to withdraw any or all of the moneys standing to the credit of said * * * [trustee] * * * at any time'.

"No money was, in fact, delivered to the trustee of this trust, and none was delivered by her to petitioner for use in his business, as provided in the contract last above referred to. An account was set up on the books of the business on which the appropriate entries were made. No withdrawals were made from this account at any time by the trustee.

"On January 15, 1940, petitioner executed another document purporting to assign to his wife as trustee for his daughter, a cash interest of $4,000 in petitioner's business. The trustee's account on the books of petitioner's business was credited with that amount.

"At the end of each of the years 1939 and 1940, petitioner computed the share of the net profits of the business alleged to be due the trust for his daughter, and credited the account as 'income accrual' with such amount. The amounts so credited were $446.50 for 1939 and $1,749.71 for 1940, and were reported by his wife, as trustee, in her 1939 and 1940 fiduciary income tax returns, and taxes, in the respective amounts of $13.86 and $72.59 were paid.

"None of the income so reported was ever paid to or used for the benefit of the beneficiary of the trust. No claim for refund of the taxes so paid has been filed by the trustee, and on October 26, 1943, an agreement not to file such claim and agreeing to indemnify the Commissioner with respect to such claim was filed with the Commissioner of Internal Revenue.

"On June 12, 1940, petitioner executed a trust instrument purporting to transfer $4,000 in trust to petitioner's wife, as guardian of their minor son. There was no delivery of any money to the trustee-guardian, the petitioner merely entering a credit to an account set up as 'Guardian Loan Account' with a corresponding charge against his own capital account. The indenture was, in all respects material to this proceeding, identical with that which purported to create the trust for petitioner's daughter, except for the necessarily different names and dates. Substantially the same kind of contract as the 'Trustee's Contract' referred to above, but denominated in this instance a 'Guardian's Contract', was executed on the same day as the trust indenture was signed. Bookkeeping entries evidencing the alleged gifts were made here, in the same manner as was done in connection with the gift to the daughter, and the share of the net income supposed to be due this trust was credited to the account as of December 31, 1940, in the amount of $464.15 and tax thereon was paid by the Guardian in the amount of $16.03.

"None of the income so credited to this account was ever distributed to or for the benefit of the beneficiary of this trust, or withdrawn for any purpose.

"No claim for refund was filed with respect to the tax paid by the Guardian here, and an agreement to indemnify the Commissioner with respect to such claim was filed on October 26, 1943."

The Tax Court found as an ultimate fact that "In making the assignments and transfers to his wife and to the trusts as above set forth, petitioner did not divest himself of the ownership and control of any res, nor did he intend to, and made no valid and completed gifts in connection therewith."

In its opinion, the Tax Court stated that it had ruled adversely to petitioner's contentions in the case of Robert Walker Tyson, "T. C. Memo. Opinion entered February 29, 1944," involving a substantially identical arrangement made by the taxpayer in that case with his wife.

With respect to the alleged gifts in trust in the instant case, the Tax Court, in its opinion, said: " * * * In establishing these trusts petitioner did not pretend to

give away absolutely any share or interest in his business. The corpus of each trust was the sum of $4,000. The fund which was the supposed subject of the gift was never, in fact, delivered to the trustee, but was retained by petitioner in his business exactly as before, never having left, for one moment, his unrestricted dominion or control. It was entirely optional with him whether any part of it, or the profits thereto accruing, could be withdrawn by his wife as trustee. None of the income was in fact, ever paid to the trustee. We think petitioner did not make valid completed gifts to the trusts in question and that he is therefore taxable on the income here involved under section 22(a) [Int.Rev.Code, 26 U.S.C.A. Int.Rev. Code, § 22]."

The Tax Court may not determine that a transfer which is conclusively shown to have been a gift was not a gift. Bogardus v. Commissioner of Internal Revenue, 302 U.S. 34, 40, 44, 58 S.Ct. 61, 82 L.Ed. 32. However, if the question whether a purported transfer is in fact a valid gift is uncertain either because the evidence is conflicting or because, the facts being undisputed, fair-minded men may honestly draw different conclusions from such facts, the question is one of fact to be determined by the Tax Court. Compare Helvering v. Johnson, 8 Cir., 104 F. 2d 140, 144; affirmed 308 U.S. 523, 60 S.Ct. 293, 84 L.Ed. 443. If opposing inferences reasonably may be drawn from undisputed facts, the judgment of the Tax Court as to what inference shall be drawn is controlling. Helvering v. Johnson, supra, page 144 of 104 F.2d; Elmhurst Cemetery Co. v. Commissioner of Internal Revenue, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491; Bogardus v. Commissioner of Internal Revenue, supra, page 45 of 302 U.S., page 66 of 58 S.Ct.

To establish the making of a valid gift, it is necessary to show an unmistakable intent on the part of the donor to make the gift, coupled with delivery to the donee, resulting in a complete relinquishment of dominion and control over the subject matter of the gift by the donor. Edson v. Lucas, 8 Cir., 40 F.2d 398, 404. Assuming that, under the applicable local law, delivery to petitioner's wife of the instruments of assignment would constitute a sufficient constructive delivery to her of the subject matter of such assignments, as the petitioner contends, we think

that, under the circumstances of this case, reasonable men might honestly believe that the petitioner never had any intent to give away his property and to part with all control over the interests in his business allegedly transferred. The instruments and book entries upon which petitioner relies to show that gifts of income-producing property were intended and were made by him do not, in our opinion, compel the Tax Court to find that valid gifts were in fact made.

It is apparent that the intent of the petitioner in making these alleged gifts was to reduce his tax liability without injuring his business. While his plan was ingenious, it seems to us, as it did to the Tax Court, that it left him with too much dominion and control over the subject matter of the alleged gifts to be legally effective. As this Court said in Helvering v. Johnson, supra, page 143 of 104 F.2d: "It is conceded, as it must be, that a taxpayer has the legal right to decrease the amount of what would be his taxes or avoid them by means which the law permits. * * * But a mere subterfuge, device or contrivance for the avoidance of taxes, adopted in order to disguise the true character of a transaction and to make it appear to be something that it is not, will not serve its intended purpose. Its form will be disregarded."

We think there was a rational basis for the Tax Court's decision, and it is affirmed.