**SCOTT**

v.

**SELF, Acting Collector of Internal Revenue.**

**No. 14837.**

United States Court of Appeals, Eighth Circuit.

Nov. 12, 1953.

126

Herschel H. Friday, Jr., and W. H. Donham, Little Rock, Ark. (Pat Mehaffy and W. J. Smith, Little Rock, Ark., on the brief), for appellant.

Cecelia H. Goetz, Special Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Alonzo W. Watson, Jr., Special Assts. to the Atty. Gen., and James T. Gooch, U. S. Atty., Little Rock, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment of dismissal of an action brought by appellant against W. D. Self, Acting Collector of Internal Revenue for the District of Arkansas, to recover certain federal income taxes alleged to have been erroneously assessed and collected. The taxes for the recovery of which the action was brought were assessed against appellant for the taxable year 1943. The taxpayer alleged that the income involved was the income of a partnership composed of himself and his wife, Juliette B. Scott, whereas the Collector contended that no valid partnership existed and that the entire income was in fact earned by taxpayer.

At the beginning of the year 1942 the Scott Paper Box Company was a corporation, the Alton Paper Box Company being the majority stockholder, holding 351 of the 700 shares of stock outstanding. The Scott company was indebted to the Alton company in the amount of $80,000. The taxpayer acquired all the stock held by the Alton company, taking the stock in the name of the Scott company, which stock so acquired was retired and as a result the outstanding stock of the Scott corporation was reduced to 349 shares, the outstanding certificates representing these shares standing in taxpayer's name except one qualifying share which stood in his wife's name. These certificates of stock were then cancelled and new certificates were thereupon issued, 174 shares being issued to Juliette B. Scott and 175 shares to L. W. Scott. The stock certificate issued to Juliette B. Scott remained in the possession of L. W. Scott at all times. At a meeting of the Board of Directors of the Scott corporation September 21, 1942, a resolution was adopted to dissolve the corporation, which recited that L. W. Scott and his wife, Juliette B. Scott, were the owners and holders of all the issued and outstanding capital

stock, and that they proposed and agreed to assume and pay all the corporate indebtedness of the company and to surrender for cancellation all of their stock to the company in consideration for the conveyance and transfer to them of all the property and assets of the company. Juliette B. Scott was not present at this meeting and had slight, if any, knowledge of the action taken. From September 21, 1942 until dissolution of the alleged partnership the business was operated in name as a purported partnership, but was actually operated as a sole ownership by L. W. Scott who made the decisions and earned the income. There was no evidence in the record that Juliette B. Scott ever had any information of what the earnings of the business were, what business the company was doing, or its financial condition. The court found that Juliette B. Scott did not at any time knowingly intend to join together with taxpayer as a partner and to assume the responsibilities and perform any duties as such partner, and that she performed none; that she contributed no independent funds or assets to the partnership at or after the dissolution of the corporation and that her interest, if any, was dependent upon the alleged gift of the corporate stock from her husband, L. W. Scott; that during the tax period in question Juliette B. Scott received no income by reason of any interest she might have had in the alleged partnership, but that such payments she might have received were paid under the obligation of L. W. Scott as her husband and as father of their children; that Juliette B. Scott actually knew nothing of the affairs of the business, and with her background and experience was probably incapable of understanding the affairs fully, even if she had been told; that her signature upon papers, writings and documents was placed there at the direction of her husband and that at the time she signed her name she did not even know the nature of the documents and she did not know their purport or import; and that the so-called partnership was created solely for the purpose of reducing income taxes. Further facts will be developed in the course of this opinion. The court found all the issues in favor of the Collector and from the judgment entered dismissing the action on its merits this appeal is prosecuted.

In his brief appellant predicates his right to reversal upon two issues, (1) that there was a bona fide completed gift for tax purposes of the stock of the Scott Paper Box Company by the taxpayer prior to the dissolution of that corporation and (2) that there was a valid partnership for tax purposes between appellant and his wife, Juliette B. Scott.

■ It must be conceded that if the Court's findings are sustained by the evidence its judgment was correct. The contention here, however, is that these findings were not sustained by substantial evidence. The findings are presumptively correct and should not be set aside unless clearly erroneous, due regard being given to the opportunity of the trial court to judge of the credibility of the witnesses. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. It stands without dispute that the business which in 1943 produced the income here in dispute was as early as 1930 owned solely by appellant. It continued to be operated and controlled by him until 1937 when it was incorporated under the name of Scott Paper Box Company. At that time 351 shares of stock were owned by the Alton Paper Box Company, 348 shares by appellant and one share by appellant's wife. The corporation was indebted to the Alton Paper Box Company to the extent of $80,000. In 1942 appellant purchased the stock of the Alton Paper Box Company and that stock was then retired. The stock certificate representing 348 shares which had been issued to him and the certificate for one share which had been issued to his wife were then cancelled and in lieu thereof a certificate for 175 shares was issued to appellant and a certificate for 174 shares was issued to his wife. Neither at that time nor at any prior time had his wife contributed any money

or property to the business, but it is claimed that the stock so issued to her was a gift from appellant. The certificate standing in her name remained in the stockbook and while she signed the formal receipt shown on the stub, she also signed an assignment of the stock, this assignment being printed on the reverse side of the stock certificate. There was no manual delivery of the certificate to her but it remained in the custody of appellant and under his sole control. She testified that she signed the certificate because her husband directed her to do so and not because she desired to do so or understood the nature of the ownership change. Following this stock transaction the directors of the corporation passed a resolution authorizing and directing the sale of all the corporate assets to the appellant and his wife, in consideration for which the vendees were to assume and pay all corporate obligations and pursuant to this resolution there was an assignment and transfer of all the corporate property to appellant and his wife as purported partners. Appellant's wife did not attend the meeting authorizing this transaction and apparently knew but little, if anything, as to its import.

 Whether or not appellant's wife contributed any capital to the alleged partnership is dependent on whether she was in fact the owner of the stock represented by the certificate standing in her name and this ownership in turn is dependent upon whether it constituted a completed gift to her from her husband. To constitute a completed gift inter vivos there must be proof of an intent on the part of the donor to make the gift and an actual delivery from the donor to the donee must be shown. The donor must surrender all dominion over the property constituting the purported gift. Edson v. Lucas, 8 Cir., 40 F.2d 398; Tyson v. Commissioner of Internal Revenue, 8 Cir., 146 F.2d 50; Cashman v. Mason, 8 Cir., 166 F.2d 693. In Tyson v. Commissioner of Internal Revenue, supra, we considered the question of the validity of a gift under circumstances somewhat similar to those in the instant case. We there said [146 F.2d 54]:

"To establish the making of a valid gift, it is necessary to show an unmistakable intent on the part of the donor to make the gift, coupled with delivery to the donee, resulting in a complete relinquishment of dominion and control over the subject matter of the gift by the donor. Edson v. Lucas, 8 Cir., 40 F.2d 398, 404. Assuming that, under the applicable local law, delivery to petitioner's wife of the instruments of assignment would constitute a sufficient constructive delivery to her of the subject matter of such assignments, as the petitioner contends, we think that, under the circumstances of this case, reasonable men might honestly believe that the petitioner never had any intent to give away his property and to part with all control over the interests in his business allegedly transferred. The instruments and book entries upon which petitioner relies to show that gifts of income-producing property were intended and were made by him do not, in our opinion, compel the Tax Court to find that valid gifts were in fact made.

"It is apparent that the intent of the petitioner in making these alleged gifts was to reduce his tax liability without injuring his business. While his plan was ingenious, it seems to us, as it did to the Tax Court, that it left him with too much dominion and control over the subject matter of the alleged gifts to be legally effective."

Certainly appellant did not relinquish his dominion and control over the stock represented by the certificate issued to his wife. It was never detached from the stub in the stockbook of the company and while Juliette B. Scott signed the receipt printed on the stub to which this certificate was attached, she signed it at

the direction of appellant without knowledge of its import, and at the same time she signed an assignment of the certificate endorsed on the back thereof. The stockbook was then left with the appellant and was under his exclusive control, and the assignment on the certificate which was executed by Juliette B. Scott enabled appellant to dispose of it in any way he might see fit.

As further evidence that there was no bona fide intent to make a gift of this stock, it is to be observed that appellant, subsequent to the date when it is claimed the stock was given to his wife, in making application for a Reconstruction Finance Corporation loan, submitted an affidavit in which, referring to property of the Scott Paper Box Company, he among other things stated:

"* * * that he holds an absolute title to all of said property and that his title thereto is not subject to any outstanding mortgage, title, note or other interests except mortgages held by the Commercial National Bank of Little Rock, Arkansas, and Alton Paper Box Company, Alton, Illinois, which mortgages are to be fully paid and discharged out of the proceeds of the proposed loan. * * *"

There was undisputed evidence that appellant had exclusive possession and control of the property, operated the business in every respect as if it were his own, and that he did not account to his wife for any part of the profits arising from the conduct of the business. We think the finding of the Court that there was no valid gift of this stock to appellant's wife and that the only purpose in the mind of appellant in issuing it in the name of his wife was to reduce his tax liability, is sustained by abundant evidence.

Having concluded that the trial court's finding with reference to the purported gift from appellant to his wife was of no validity, it follows that she made no contribution in money or property to the invested capital of the business and it is conceded that she made no contribution of services. The Court also found that there was no good faith intention on the part of appellant that his wife should join with him as a real business partner and that his wife did not knowingly intend to join with him as a business partner. In view of the facts so found by the trial court, which we think are sustained by the evidence, the Court's conclusion that no partnership in fact existed is sustained by the decisions of the Supreme Court and by the decisions of this court. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Kohl v. Commissioner of Internal Revenue, 8 Cir., 170 F.2d 531; Nelson v. Commissioner of Internal Revenue, 8 Cir., 184 F.2d 649, 651. In Nelson v. Commissioner of Internal Revenue, supra, we had occasion to consider the question of the sufficiency of the evidence to sustain a so-called family partnership. In the course of that opinion we reviewed to some extent the current opinions of the Supreme Court dealing with this subject. We there said, inter alia:

"Whether for federal tax purposes a partnership exists depends upon the particular facts in each case. A taxpayer may not by the device of a purported partnership divide his income for the purpose of preventing having it all taxed to himself, and the family partnership is looked upon with suspicion and is subjected to special scrutiny to prevent tax avoidance. Recent decisions of the Supreme Court indicate that the vital question to be determined in these family partnership cases is whether 'the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect in a ques-

tion of fact, to be determined from testimony disclosed by their "agreement, considered as a whole, and by their conduct in execution of its provisions."' Commissioner [of Internal Revenue] v. Tower, 327 U. S. 280 [66 S.Ct. 532, 90 L.Ed. 670].

"In Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, the Supreme Court gave further consideration to the family partnership problem and gave added emphasis to the thought that the intent of the parties is of very great if, indeed, not controlling importance. In the course of that opinion it is said: 'The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established 'by the Tower case, but whether, considering all the facts— the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.'"

■■ One further contention should be noticed. Juliette B. Scott brought divorce proceedings against appellant in May, 1944. In the course of the proceedings she alleged that a partnership existed between herself and her husband and that by reason of this partnership she had an interest in the business operated by him. In his original answer he denied this among other allegations. But by later answer seems to have conceded the existence of such a partnership. Neither the government nor the Collector was a party to these proceedings and the declaration of Mrs. Scott

was, when made, a self-serving one, and in view of appellant's contention with reference to his tax liability, his admissions were also in the nature of self-serving declarations. There was ultimately a settlement of property rights but the trial court in the instant case found that the property which Mrs. Scott secured as a result of her divorce proceedings was not paid her because of any interest she had in the business, but was paid her in "settlement of the family estate" and in settlement of the property rights existing because of the marriage. We here again observe that the court specifically found that, "From the dissolution of the corporation to the time of the property settlement in the divorce proceedings, Juliette Ball Scott received no benefits from the earnings of the alleged partnership. All the moneys she received, however, it appears on the books of the company, were paid to her by her husband, L. W. Scott, under his obligation as her husband and the father of their children, and were not paid her out of the earnings of the alleged partnership by reason of any interest she might have had in the partnership." It must be borne in mind that this is an Internal Revenue action governed by federal laws. The federal courts have declared the law with reference to family partnerships and even a judgment of a state court declaring the existence of a partnership between a husband and wife is not determinative of the question whether the entire income of a partnership business is taxable against the husband. Doll v. Commissioner of Internal Revenue, 8 Cir., 149 F.2d 239; Poplar Bluff Printing Co. v. Commissioner of Internal Revenue, 8 Cir., 149 F.2d 1016, 1018. In Poplar Bluff Printing Co. v. Commissioner of Internal Revenue, supra, it is said:

"The status of a particular entity under the state law is not controlling in determining whether it is subject to Federal tax."

We are clear that neither the declarations of the interested parties nor the judgment of the state court can have any

conclusive determination as to the status of a taxpayer subject to federal income taxes.

Finding no reversible error in the record, the judgment appealed from is affirmed.