**RAND et al. v. HELVERING, Commissioner of Internal Revenue.**

No. 9983.

Circuit Court of Appeals, Eighth Circuit.

April 19, 1935.

Leland W. Scott, of Minneapolis, Minn. (Harry A. Blackmun and Junell, Driscoll, Fletcher, Dorsey & Barker, all of Minneapolis, Minn., on the brief), for petitioner.

Lucius A. Buck, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and James W. Morris, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before STONE, GARDNER, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

The Commissioner refused to allow deductions claimed by Rand Company and by R. R. Rand, Jr., in assessment of the income tax of each of them for the year 1929. In each instance, the claimed deduction was based upon loss on certain corporate stock alleged to have been realized by sales on December 31, 1929. The cases of the two taxpayers were consolidated by the Board, and from orders of the Board sustaining the Commissioner this petition is brought.

The evidence is as follows: The taxpayer, Rand Company, is a closely held "family" corporation engaged in buying, selling, and holding securities and other properties. Taxpayer R. R. Rand, Jr., is president of this company. Prior to December, 1929, the company had acquired and owned 1,000 shares of the stock of Harrison's Orange Huts, Incorporated, and R. R. Rand similarly held 3,450 shares of the same stock. In December, 1929, the Orange Huts corporation was in serious financial difficulty, and an involuntary petition in bankruptcy was filed on the 27th of that month. The liabilities of this corporation were substantially in excess of its assets, and its stock, listed on the Chicago Curb, had declined much in price. During the last half of that month, 4,325 shares were traded on in that market at prices ranging from 25 cents to $1.75 a share. The brokers of the taxpayers had informed them that their holdings could not be marketed there, and near the end of the month they sought unsuccessfully to sell the stock in the markets at Minneapolis and St. Paul. On the last day of the month, the taxpayers sold these shares to A. S. Trux, who was a salaried employe of the Rand Company as assistant secretary-

treasurer, and had been such for about a year and a half. The certificates representing the shares were assigned to him, reissued in his name and delivered to him, and the transactions were recorded in the accounts of the taxpayers. The Rand Company received $5 as full payment for its 1,000 shares, and Rand received $10 in full payment for his 3,450 shares. The 1,000 shares had cost the Rand Company $29,020 and the 3,450 shares had cost Rand $85,-722.19. Treating the above sales as a realization of losses on the stocks, the company claimed a loss deduction of $29,015.00 and Rand claimed a like deduction of $85,-712.19. These are the losses which were denied as deductions and are here involved. After December, 1929, the business of the Orange Huts corporation improved; the bankruptcy proceedings were terminated; a reorganization of the company was planned; and its stock became active on the market, advancing in price until, in May, it was selling for $6 a share. On May 14, 1930, the stock was reconveyed by Trux to the taxpayers for the same amounts ($5 and $10, respectively) he had paid therefor. At that time the market value of all of the stock was $26,700, at $6 per share.

The evidence as to why these sales and these conveyances took place is as follows: Rand testified that he had investigated the value of the stock and had concluded, in December, 1929, that it was entirely worthless; that he had unsuccessfully tried to sell the stock; that, so thinking, he and the company wished to realize this loss during the taxable year. He could not remember the conversation between Mr. Trux and himself concerning the sale of the stock to Trux "but the stock was offered to him at $10.00 and he bought it." The evidence of Trux as to this transaction is that he did not buy the stock as an investment and that his reason for buying it was "just buying it because it was a matter of having him get his loss back; he couldn't sell it any place else, so I accommodated the gentleman." As to the repurchase of the stock, Rand testified that he approached Trux concerning the matter; that he could not remember the conversation, but that it was to the effect "that it looked as though something was going to be worked out and a reorganization made which might give Harrison's Orange Huts, Incorporated, some value. That it seemed to me we ought to have the stock back." The testimony of Trux as to the repurchase was that he learned of the increas-

ed market on this stock, and, going to Rand's office, told him "that this stock had proven to be of value and I thought he ought to have it back." Trux stated his reason for such action was that: "I didn't think I was entitled to make a profit out of something that I thought was worthless when I bought it." In response to a question as to who had set the price for the repurchase, Trux testified "I think I volunteered to give it back to him for just what he [Trux] paid for it." Trux also stated that he thought Mr. Rand had suggested that Trux ought to have some profit, "but it wasn't anything that interested me very much," and he so advised Mr. Rand. Both Rand and Trux testified that there was, at the time of the sale to Trux, no understanding that the stock would be repurchased. Trux testified: "That is the only time in my life I ever had 1,000 shares of stock." There was evidence of sales of this stock on the Chicago Curb in blocks of 100 to 300 shares daily at from 75 cents to $1.75 per share, from December 18 to 24, 1929; that on December 25th (probably 26th), 200 shares were sold at 25 cents; on the 27th, 425 shares at 87½ cents; on the 28th, 1,000 shares at 75 cents to 87½ cents; on the 30th, 1,250 shares at 25 cents to 75 cents; and the 31st, 600 shares at 75 cents to $1.50.

If the sales by the taxpayers to Trux were complete and final with no understanding with him as to repurchase, the loss was deductible; otherwise not. Shoenberg v. Commissioner, 77 F.(2d) 446 (C. C. A. 8). The burden was upon taxpayers to establish the above fact. Transactions of this character are necessarily secret, and the real situation is known only to the immediate parties. The Board was not compelled blindly to accept their testimony that there was no such understanding. It could examine the probabilities of such truth as revealed by the evidence of what was done. That a salaried officer would invest his own money purely to accommodate his superior and after the stock reached a total value of $26,-700 would want to return it solely because "I didn't think I was entitled to make a profit out of something that I thought was worthless when I bought it" is a rather flimsy thing. It is possible but highly not probable. The Board was justified in rejecting it as insufficient to carry the burden of proof resting on the taxpayers. There is no good reason why we should disturb the conclusion reached by the Board.

The orders of the Board are affirmed.