**Richard A. MILLER, Petitioner-Appellant,**

v.

**The Honorable John A. CHAFEE, Secretary of the Navy, and J. D. Stevens, Cdr., Commander Escort Squadron One, Respondents-Appellees.**

**No. 71-1604.**

United States Court of Appeals, Ninth Circuit.

June 20, 1972.

David C. Schutter, Honolulu, Hawaii, for petitioner-appellant.

Robert C. Mardian, Asst. Atty. Gen., Robert L. Keuch, George W. Calhoun, Washington, D. C., Joseph M. Gedan, Asst. U. S. Atty., Honolulu, Hawaii, for respondents-appellees.

Before ELY and TRASK, Circuit Judges, and WILLIAMS, District Judge.*

ELY, Circuit Judge:

Miller enlisted in the United States Navy in 1961, at the age of 17. He served as a submariner until 1966, when he was sent to college at the Navy's expense. After receiving an extensive education, Miller attended Officers Candidate School and, in May, 1970, was commissioned as an Ensign. Several months later, in November, 1970, he applied for a discharge as a conscientious objector. His efforts were fruitless. Although lower-echelon naval authorities recommended that Miller be released, his application was ultimately denied by the Bureau of Naval Personnel. Miller then filed a petition for a writ of habeas cor-

---

* The Honorable Spencer Williams, United States District Judge, Northern District of California, sitting by designation.

pus in the District Court. That court, 324 F.Supp. 1344, disposed of the petition in a rather bizarre fashion. Relief was to be granted, but only upon the condition that Miller should arrange, satisfactorily to the Navy, to make payments reimbursing the Government for the college education he had received at the Navy's expense while enlisted. Contending that the imposition of such a condition was legally insupportable, Miller appeals.

■ Before we reach the principal question, we confront the question of whether the District Court had jurisdiction to consider the petition. The Government, contending that it did not, argues that Miller failed to name a proper respondent. We cannot accept that argument.

Prior to February, 1971, Miller was attached to the *USS McMorris,* part of Destroyer Escort Squadron One. That squadron, commanded by appellee Stevens, was berthed at Pearl Harbor. At that time, Stevens was unquestionably Miller's "custodian" for the purposes of habeas corpus jurisdiction, and Stevens was amenable to the process of the District Court in Hawaii. On February 4, 1971, however, Miller was transferred, out of Stevens' command, to the *USS Chipola,* another vessel located at Pearl Harbor. He was given 30 days to report to the commanding officer of the *Chipola.* During that period, Miller filed his petition in the District Court. Under Navy regulations, Stevens ceased to be Miller's direct commander as soon as Miller received his transfer orders. Thereafter, until he reported to the *Chipola,* Miller was nominally in the custody of the Chief of the Bureau of Personnel in Washington, D. C. Thus, according to the Government, Stevens was not Miller's custodian, and relief was available to Stevens only in the District of Columbia.

We decline, in the circumstances of this case, to indulge in the fictitious, limited concept of custody advanced by the Government. Miller was never in the District of Columbia, nor was he ever expected to be there. The alleged "custody" exercised by the Chief of the Bureau of Naval Personnel was no more than a hypertechnicality, serving record purposes known only to the Navy. Miller's actual custody remained in Navy officials in Hawaii,[1] where Miller's past and future duty stations were located.[2] During the leave period when Miller filed this petition, we think that the commanders of both those stations were his "custodians" for habeas corpus purposes. The District Court was therefore correct in assuming jurisdiction. *See* Dillon v. Chandler, 452 F.2d 1081 (9th Cir. 1971). Any contrary holding would unnecessarily, and even unreasonably, restrict access to the courts for habeas relief. *Cf.* Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972).

■ We now turn to the merits of the appeal. Our review of the record convinces us that the District Court

---

1. We note that the Naval officials in Hawaii during the proceedings below exercised sufficient influence over Miller's activities as to (1) be in a position to recommend that Miller be given an administrative leave pending ultimate resolution of this action, and (2) assure the District Court, during a hearing, that nothing would be done by Naval authorities to impair Miller's position before the court. "Whatever the mysteries of [Naval] bookkeeping might ordain, . . . the fact that [Miller has remained in Hawaii] for over [a year] cannot be ignored." Feliciano v. Laird, 426 F.2d 424, 427 n. 4 (2d Cir. 1970).

2. This case is obviously distinguishable from Jarrett v. Resor, 426 F.2d 213 (9th Cir. 1970), and United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir. 1969). In each of those cases, the petitioner, a serviceman on leave, filed his petition in a jurisdiction where neither his past nor his future commander was to be found. Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971), is distinguishable for a similar reason. In that case, no officer within the jurisdiction of the District Court had ever had, or was scheduled to have, Schlanger under his command.

properly determined that Miller was entitled to be honorably discharged. Miller's application made a case for conscientious objector status, and the Government does not argue to the contrary. None of the Navy officials who personally saw and interviewed Miller doubted his sincerity, yet, as we have hitherto noted, the Chief of Naval Personnel ("CNP") denied his application. In essence, the basis for the CNP's decision was his determination that Miller, because his beliefs became crystallized only after he had received 299 weeks of college education at the Navy's expense, "[did] not hold the deep convictions of a conscientious objector" and was not sincere. We find, as did the District Court, that that decision is not supported by the record. Rather, as this court recently said in a case presenting similar facts:

"[T]he file reveals a prolonged effort on [Miller's] part to reconcile his increasing pangs of conscience with his concepts of the demands of military duty. The lateness of crystallization under these circumstances is not an indicium of insincerity. (*Cf.* Rastin v. Laird, 445 F.2d 645 (9th Cir. 1971)) . . . . [W]e think that it is consistent with sincerity that an officer would try to find some way to reconcile the demands of duty with the demands of conscience in such a fashion that both might be respected and that he would postpone a repudiation of his military duty until it became clear that its demands made reconciliation impossible." Tressan v. Laird, 454 F.2d 761, 762–63 (9th Cir. 1972).

Finally, we hold that the District Court improperly conditioned Miller's release upon his making monetary payments to the Government. On this appeal, the Government has not argued, nor could it successfully argue, that the imposition of the condition is sustainable. It attached an unauthorized burden upon Miller's exercise of his right to seek conscientious objector status, impairing his First Amendment rights.

Upon remand, the District Court will amend its Order so as to grant Miller's petition unconditionally.

Reversed and remanded, with directions.