Lieutenant Robert E. SHOLARS, United States Navy, 732010, Petitioner-Appellant,

v.

Rear Admiral Alfred R. MATTER, Commandant, 12th Naval District, Treasure Island, California, and Vice Admiral Dick H. Guinn, USN, Chief of Naval Personnel, Washington, D. C., Respondents-Appellees.

No. 71–3078.

United States Court of Appeals, Ninth Circuit.

Jan. 11, 1974.

John Vaisey (argued), of Somers, Kallen & Vaisey, San Francisco, Cal., for petitioner-appellant.

James R. Browning, U. S. Atty., Joseph Reeves, Asst. U. S. Atty. (argued), San Francisco, Cal., for respondents-appellees.

Before BROWNING and WRIGHT, Circuit Judges, and BATTIN,* District Judge.

BATTIN, District Judge:

Sholars appeals the dismissal for lack of jurisdiction of his petition for a writ of *habeas corpus*.[1] He sought the writ on the grounds that he was illegally denied a conscientious objector discharge from the United States Navy. As the district court did not reach the merits of his claim, the only reviewable issue on this appeal is its conclusion regarding jurisdiction. This court's power to proceed is founded upon 28 U.S.C. § 1291.

Sholars was commissioned after graduation from the United States Naval Academy in 1968. Until the filing of this petition he had had no overseas assignments. In June 1970 he was selected for a post-graduate study program at Navy expense, leading to a master's degree in civil engineering at the University of California, Berkeley. He completed the program, was granted the de-

gree, and was given orders on July 8, 1971, to report to Naval School, Civil Engineer Corps Officers, Port Hueneme, California, by August 18, 1971. On July 21 he accepted a promotion to the grade of lieutenant and executed a new oath of allegiance in the regular form.

On August 12, before departing for Port Hueneme, he submitted an application for discharge as a conscientious objector to the Chief of Naval Personnel, through the Commanding Officer of the NROTC unit at Berkeley. The latter officer duly forwarded it directly, and not through Rear Admiral Matter, Commandant, 12th Naval District, one of the respondents. On the following day, Lt. Sholars proceeded to Port Hueneme.

The nine-week school at Port Hueneme was to precede an ultimate permanent duty station in Saigon, Viet Nam. But, on September 29, 1971, Sholars' orders changed his ultimate permanent duty station to the Naval Station, Guam, and authorized thirty days' delay in reporting, to be charged as leave.

The request for a conscientious objector discharge was denied on October 1 by a letter addressed to Lt. Sholars through the Commanding Officer of the School at Port Hueneme. No communication to this effect went to the Commandant, 12th Naval District, or the commanding officer of the NROTC unit at Berkeley.

After being detached from the school at Port Hueneme on October 22, Sholars proceeded to Northern California. But, rather than reporting for transportation at Travis Air Force Base, he filed this action on November 23. Rear Admiral Matter and Vice Admiral Guinn were, respectively, the Commandant of the Twelfth Naval District and the Chief of Navy Personnel. Admiral Matter was physically within the territorial limits of the judicial district in which the action

---

* Honorable James F. Battin, United States District Judge, District of Montana, sitting by designation.

1. Deployment of the petitioner by the Navy has been stayed by Mr. Justice Douglas pending disposition of this appeal.

was brought; Vice Admiral Guinn was physically present at his duty station in Virginia.

DISCUSSION:

■ The power of the district court to issue the writ requested[2] is legislatively limited to its territorial jurisdiction.[3] Prerequisite to a legitimate exercise of the power is a conclusion that the contested custody[4] and the custodian[5] are found within the territorial jurisdiction of the court.[6] We are called upon to determine the accuracy of the district court's conclusions. Those conclusions are that one respondent, Admiral Matter, while within the boundaries of the Northern District of California, was not a custodian, that the other respondent, Admiral Guinn, did not exercise custody and control over the petitioner within the district, and that the petitioner's presence within the district was purely casual.

ADMIRAL MATTER:

■ Assuming that this officer had once been petitioner's custodian for *habeas corpus* purposes,[7] we conclude that relationship had terminated by the time of filing. More than three months elapsed from petitioner's detachment from the Twelfth Naval District to the filing of his petition.[8] That is a factor which this court cannot ignore and one which logically compels our decision.

ADMIRAL GUINN:

■ We conclude that naming Admiral Guinn as respondent likewise fails to confer jurisdiction on the district court. The district court's conclusion that this respondent did not exercise control over the petitioner within the judicial district is, in our view, correct.

We reject as a matter of law the contention that the Chief of Naval Personnel [CNP] is, for *habeas corpus* purposes, the custodian of *active duty* Naval officers on authorized leave between duty stations. We have previously declined to accept that interpretation of Naval Regulations.[9] While the facts precipitating the earlier rejection are the geographic converse of those involved here, an examination of the authority vested in the CNP over Naval officers between duty stations leads the court to conclude that the CNP was not this petitioner's custodian on November

---

2. The Great Writ: Habeas Corpus Ad Subjiciendum. See: Carbo v. United States, 364 U.S. 611, 619, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961).

3. 28 U.S.C. § 2241.

4. Schlanger v. Seamans, 401 U.S. 487, 91 S. Ct. 995, 28 L.Ed.2d 251 (1971), reh. den. 402 U.S. 990, 91 S.Ct. 1671, 29 L.Ed.2d 156; Jarrett v. Resor, 426 F.2d 213 (9th Cir. 1970); Rudick v. Laird, 412 F.2d 16 (2nd Cir. 1969).

5. Ex Parte Endo, 323 U.S. 283, 306, 65 S.Ct. 208, 89 L.Ed. 243 (1944); Hirota v. MacArthur, 338 U.S. 197, 201, 69 S.Ct. 197, 93 L.Ed. 1902 (1948), concurring opinion of Mr. Justice Douglas announced June 27, 1949; *Schlanger*, supra note 5; Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972).

6. The Supreme Court has construed 28 U.S. C. § 2241 to require the *habeas corpus* petitioner's presence within the forum judicial district. Ahrens v. Clark, 335 U.S. 188, 64 S.Ct. 1443, 92 L.Ed. 1898 (1948). The va-

lidity of that principle as an essential "third element" to a *habeas corpus* jurisdictional conclusion is now doubtful. Braden v. 30th Judicial District, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), makes clear that a *habeas corpus* petitioner's presence within the district is not *always* required for an exercise of § 2241 power. Because Sholars was physically present within the forum district appealed from, no such issue is here raised.

7. The Government argues that Admiral Matter at no time was a custodian of the petitioner. The course of decision we follow does not require inquiry into that technical question.

8. The court judicially notices the fact that Port Hueneme is in the Eleventh Naval District *and* within a judicial district other than the Northern District of California where Sholars filed his petition.

9. Miller v. Chafee, 462 F.2d 335, 337 (9th Cir. 1972).

23, 1971. Those regulations vest in the CNP only nominal control over Naval officers between assignments. Only the most tenuous construction of those regulations can render the CNP anything more than an administrator.

## IN CUSTODY:

 The conclusion that Sholars' presence in the district was purely casual is, in our view, correct. Nevertheless, the petitioner, relying upon Strait v. Laird, *supra* note 5, argues that the district court in the Northern District of California had jurisdiction for two reasons: (1) It was the district in which Lt. Sholars had a residence, in Berkeley, and (2) it was the district wherein he had filed an application for discharge as a conscientious objector. His reliance upon the rule in *Strait* is misplaced. *Strait* involved an application for discharge as a conscientious objector of an unattached Army Reserve officer not on active duty, domiciled at all times in California, ordered to report for active duty in Georgia, but whose military records were kept at Fort Benjamin Harrison, Indiana. In holding that Strait could litigate in California, the court found two reasons: (a) Only in California had he had meaningful contact with the Army, and (b) needless expense and inconvenience would be entailed if he were to be required to go to Indiana where he had never been.

Lt. Sholars had once had "meaningful contacts" with the Navy in Berkeley while he was a civilian student there obtaining a master's degree at government expense, as well as at prior duty stations. When he left Berkeley, pursuant to orders, for further schooling for nine weeks at Port Hueneme, he terminated his "meaningful contacts" with the Northern District of California and established new ones in the Central District of California. Port Hueneme was not a way station, or collecting point, or transportation center where casual officers gathered for overseas transportation. It was indeed a duty station for nine weeks where significant military duties were to be performed. There, Sholars was under military discipline and control, serving in uniform, and gathering additional experience and qualifications for his next duty overseas.

We also reject the argument of the Government that only in the Territory of Guam does any district court have jurisdiction. It is consistent with the holding in *Strait, supra,* and with the decision of other Courts of Appeals that service personnel under orders to overseas assignments are not required to litigate their conscientious objector claims only after traveling to the overseas base.

In short, this court finds that Sholars simply was not in custody in the Northern District of California on November 23, 1971, because his presence there was "casual". A review of several recent Circuit Court opinions lends support to the above conclusion. In Miller v. Laird, 474 F.2d 999 (5th Cir. 1973), a habeas corpus proceeding was initiated by an Army major asserting a conscientious objector claim. The Court of Appeals for the Fifth Circuit held that:

"Although Major Miller had signed out in the personnel register of his unit pursuant to orders requiring him to report to Viet Nam prior to the filing of the instant petition, the district court concluded that petitioner was still subject to the custody of the commanding general of the Fifth United States Army at the time of filing his *habeas corpus* petition. The district court relied on the following factual circumstances to establish this jurisdiction: First, petitioner did not complete his outprocessing from his former unit; second, petitioner's financial records remained under the custody of the Fourth United States Army (which was merged with the Fifth United States Army); third, petitioner was physically present and quartered at Fort Sam Houston, Texas, on the date the original Petition for Writ of Habeas Corpus was filed, and while he was so present he was subject to the rules and regulations of Fort Sam Houston; and fourth, the

headquarters of the Fifth United States Army subsequently issued and published special orders to petitioner reassigning him from Viet Nam to Fort Sam Houston, Texas."

Miller v. Laird, *supra* at page 1000.

In comparing the four factual circumstances in the above action with the instant case, the court concludes that the record before it includes no recitation of facts similar, or dissimilar, to those reviewed in the first, second, and fourth recitation in the *Miller* case. However, the third point, relating to Major Miller's presence at an Army installation and subject to its rules and regulations on the date of filing of his original petition, can be easily contrasted with Sholars' authorized leave status between duty assignments in the instant action. Sholars' last meaningful contact with the Navy at Port Hueneme [10] where he had been stationed for over a month.

Another recent case is that of Emma v. Armstrong, 473 F.2d 656 (1st Cir. 1973). In that action, the petitioner, an Army enlisted man, sought a discharge, and proceeded on a petition for *habeas corpus* in the Massachusetts District Court, naming the Commandant of Fort Devens, Massachusetts, as a respondent. After returning from a tour of duty in Viet Nam, Emma went home for a month's leave in Rhode Island. The district court found that Emma mistakenly believed that he was to remain at home until he received his discharge or further instructions. Emma received nothing and eventually went to an Army post nearest his home (Fort Devens) to make inquiry. He was told that he must remain at the post while his inquiry was pursued. Petitioner declined and brought that action in District Court for the District of Massachusetts.

The Court of Appeals for the First Circuit upheld the district court's finding of jurisdiction:

"With respect to jurisdiction, although the question is close, we accept the court's finding that . . . Emma had established 'meaningful contact' at Fort Devens. . . . It is true that he did not submit himself to full custody, as in Meck v. Commanding Officer, 3 Cir. 1971, 452 F.2d 758. . . . Fort Devens, under the unusual circumstances of this case, was a natural place for him to go."

*Emma, supra* at pages 657–658.

The petitioner in the instant case was not requested to remain at any post within the Northern District of California. And, Sholars' last meaningful contact with the military was at Port Hueneme.

In an action before the Tenth Circuit, Sutton v. Laird, 468 F.2d 1376 (1972), the court affirmed the judgment of the United States District Court for the District of Utah where petitioner applied for a writ of *habeas corpus* while he was stationed in Utah, although he had already received orders to report to a California station and although he had already been detached from his Utah station for accountability purposes. The court had held:

"It is obvious that Sutton's [the petitioner's] relevant active duty contacts had been with the dispatching station at Dugway [Utah]. . . . Not only had Sutton resided in Utah, but also the parties who conducted the basic investigation regarding his application while resident there. . . . These meaningful contacts establish the presence of the requisite custodian in Utah."

*Sutton, supra* at page 1377.

Again, Sholars' relevant active duty contacts have been at Fort Hueneme.

In Hoover v. Kern, 466 F.2d 543 (5th Cir. 1972), the court found that the petitioner's incarceration in Houston, Texas, was sufficient contact to constitute jurisdiction in the Southern District of Texas, although he was a United States Army Reservist last assigned to a reserve unit in Denver, Colorado. In the instant case, Sholars was not incarcerat-

---

10. Port Hueneme is within the Central District of the State of California.

ed anywhere. His last duty assignment was within the Central District of California.

In yet another action, Carney v. Secretary of Defense Melvin Laird, 462 F.2d 606 (1st Cir. 1972), the court held that a serviceman who is on leave under order to report for a new duty station could properly bring a *habeas corpus* action in the jurisdiction where his present duty station was located before the time for reporting to a new station had expired.

■ This court concludes that the rule above applies to Sholars, whose last meaningful contact was at Port Hueneme, within the Central District of California. It is a well-known principle of law that a court will not issue the writ in a territory beyond its jurisdiction.

Dismissal affirmed.

BROWNING, Circuit Judge (dissenting):

The court's opinion implicitly recognizes that to establish jurisdiction in a given district under 28 U.S.C. § 2241 a petitioner need only show meaningful contacts with the custodial authority in that district at the time of filing. *Ante* at p. 282; Strait v. Laird, 406 U.S. 341, 343, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972). I agree with this reading of *Strait*. In my opinion, however, appellant's contacts with the military in the Northern District of California on November 23, 1971, were at least as "meaningful" as those in Guam or the Central District of California. I therefore dissent from the result reached by the court.

Northern California was the logical place for appellant to litigate his claim under traditional venue principles. His application for discharge as a conscientious objector was filed there. Six of the nine persons listed in the application as sources of "information as to the sincerity of the applicant's professed convictions" were residents of the Northern District. The initial processing of the application by the Navy took place in the Northern District. Appellant was interviewed there by Naval officers Captain Hardage, senior chaplain, and Commander Harris, psychiatrist, as required by the Chief of Naval Personnel. The hearing on appellant's application was held in the Northern District before LCDR Harrison, the hearing officer designated by the Navy. Captain Kerr, appellant's commanding officer at Berkeley, forwarded the application, with endorsements, from the Northern District to the Chief of Naval Personnel, recommending appellant's discharge. Thus, almost all of the substantial contacts with the Navy regarding the subject matter of the controversy occurred in the Northern District; most of the witnesses and other evidence bearing on the propriety of the denial of appellant's application were located there.

On the other hand, the government had no real interest in preventing appellant from litigating his claim in the Northern District. One United States Attorney can handle such a petition as well as another, and the evidence required for the defense is more likely to be available in the Northern District than in the other suggested forums. While the government may have an interest in denying habeas corpus petitioners freedom to choose the forum they think most favorable, appellant's decision to file in the forum that is the most logical one in which to litigate his claim hardly raises the evils of forum shopping. Unless 28 U.S.C. § 2241 clearly precludes jurisdiction in the Northern District, therefore, appellant should not be required to litigate elsewhere. *See* Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 493–494, 500, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).

Feliciano v. Laird, 426 F.2d 424, 427 n.4 (2d Cir. 1970); Miller v. Chafee, 462 F.2d 335, 337 (9th Cir. 1972); Carney v. Laird, 462 F.2d 606, 607 (1st Cir. 1972); Sutton v. Laird, 468 F.2d 1376,

1377 (10th Cir. 1972); and Piland v. Eidson, 477 F.2d 1148, 1150–1151 (9th Cir. 1973), demonstrate that when a serviceman is in the course of transfer from one duty station to another, section 2241 jurisdiction exists in the district in which the dispatching station is located. Appellant received orders assigning him from his permanent station in Berkeley to a new permanent duty station in Guam (initially Vietnam), with 60-day "temporary duty under instruction" (Findings of Fact and Conclusions of Law at 2) at Port Hueneme. At the time appellant filed suit he had completed his instruction at Port Hueneme and returned to Berkeley on leave, prior to reporting to Guam. The temporary training assignment at Port Hueneme was collateral to appellant's change of station from Berkeley to Guam. It is entirely unrealistic, and in no one's interest—that of the courts, the Navy, or appellant—to treat Port Hueneme rather than the Naval Reserve Officer Training Corps unit at Berkeley as appellant's detaching station for the purposes of applying the rule of the cited cases.

As the court notes, the Navy claims Admiral Matter was not appellant's military custodian while appellant was on active duty in Berkeley. The Navy concedes, however, that if Admiral Matter was not appellant's custodian, then Admiral Guinn, the Chief of Naval Personnel, was.* Both respondents were "present" and properly served in the Northern District—Admiral Matter because he was physically there, and Admiral Guinn, if he was appellant's "custodian," because of appellant's substantial contacts there with the Navy. Strait v. Laird, *supra*, 406 U.S. at 344, 345, 92 S.Ct. 1693. Since at least one of the respondents was appellant's custodian at Berkeley, the detaching station, there was jurisdiction in the Northern District of California.

* As the majority notes, Miller v. Chafee, *supra*, rejects the contention that the Chief of Naval Personnel is the "custodian" of all active duty Naval personnel on leave between duty stations; it does not follow that he

would not be a proper respondent if, as the Navy argues, he was appellant's commanding officer while appellant was on duty as a student at Berkeley.