AINSWORTH, Circuit Judge:
In this tax refund suit the question for decision is the validity of a claimed loss deduction growing out of the sale and repurchase by taxpayer to a bank of a large amount of unrated municipal bonds. Plaintiffs David M. Fender, Trust No. 1, Harris R. Fender, Jr., Trust No. 1, and co-trustees Harris R. Fender and Thomas Sharp, brought this suit[1] seeking a refund of 1969 federal income taxes assessed as a result of the Internal Revenue Service’s disallowance of a loss deduction claimed in connection with the sale and repurchase of municipal bonds held by the trust. The district court found for the plaintiffs and ordered a refund of the taxes and penalties plus interest. The Government appeals that decision contending that the sale of bonds resulting in the loss was not a bona fide sale.
Harris R. Fender, an experienced investment banker, established two trusts for his two sons and in 1969 the trusts had large capital gains from the sale of certain Continental Telephone stock. To offset those gains, Harris Fender, co-trustee of the trust, attempted to sell an installment of Bender Road Improvement District WW and SS Combination Tax and Revenue Bonds (“Bender Bonds”) owned by the trusts. These bonds, along with the bond market as a whole, had substantially declined in value as a result of a rise in interest rates. The bonds were purchased by the trusts for the amount of $435,017 and had a par value of $445,000. Because the bonds were unrated, they could not be sold in the public bond market. On December 26, 1969, Fender completed an over-the-counter sale of the Bender Bonds to the Longview National Bank & Trust Company, Longview, Texas, for $225,000 (approximately 50% of par value) plus accrued inter *936 est. This resulted in a $106,258.35 loss for each of the trusts. At the time of the sale, Fender controlled 40.7% of the Longview National Bank’s stock either individually or through the two trusts. Shortly thereafter, on January 15, 1970, the stock interest of Fender and the trusts in the Longview Bank increased to 50.15%. On February 6, 1970, 42 days after their transfer to the bank, the trusts repurchased the bonds from the bank for $224,735 (approximately 50.5% of par value) plus accrued interest. Both transactions were made at the fair market value of the bonds, though the bonds had limited marketability since they were unrated. The Internal Revenue Service disallowed the loss deduction claimed in connection with the transfer of the Bender Bonds and this litigation ensued.
A taxpayer is allowed a deduction for “any loss sustained during the taxable year . . . .” I.R.C. § 165(a).[2] However, not every transaction purporting to result in a loss is deductible. “Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.” Treas.Reg. § 1.165-l(b). The burden of showing that the loss was bona fide is on the taxpayer. See Rand v. Helvering, 8 Cir., 1935, 77 F.2d 450. Further, the district court’s conclusion that the transfer of the Bender Bonds to the Long-view Bank was a bona fide sale is a conclusion of law which this Court may fully review. See, e. g., Biedenharn Realty Co., Inc. v. United States, 5 Cir., 1976, 526 F.2d 409, 416 n.25 (en banc), cert. denied, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); Casner v. Commissioner of Internal Revenue, 5 Cir., 1971, 450 F.2d 379, 387; Waterman Steamship Corp. v. Commissioner of Internal Revenue, 5 Cir., 1970, 430 F.2d 1185, 1192; American National Bank of Austin v. United States, 5 Cir., 1970, 421 F.2d 442, 451.
In deciding to sell the Bender Bonds, the taxpayers were motivated by the possibility of tax avoidance. Standing alone such a motive is an insufficient basis for disallowing a deduction.
The legal right of a taxpayer to decrease the amount of what would otherwise be his taxes, or to altogether avoid them, by means which the law permits, cannot be doubted. . . . But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended.
Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935). The circumstances of this case establish that the taxpayers did not in substance experience the loss that is necessary for a deduction under section 165, and that the sole purpose of the transaction was to create a tax loss in the year 1969.
Apart from the tax motive, there was no apparent reason for the taxpayers to sell the Bender Bonds. While increased interest rates had caused the market value of the bonds to decline, the issuer of the Bender Bonds remained financially sound and capable of continuing to pay current interest and the full par value of the bonds at maturity. Hence, a bondholder would experience no loss if the bonds were held to maturity. Although the trusts appeared to sustain a significant loss by transferring the bonds to the bank during a depressed bond market, the ability to repurchase these bonds meant that the trusts would eventually be paid their original investment in the bonds and would suffer no real loss from the sale.
Hence, in determining whether the taxpayers suffered a genuine loss in the alleged sale to the bank, we examine the circumstances to see whether the taxpayers were exposed to a real risk of not being able to repurchase the bonds in a short period of time and thus of not being able to recover the apparent loss from the December 26 sale to the bank. This, in turn, depends on whether the taxpayers were *937 able effectively to control the Longview Bank sufficiently to assure a resale of the bonds to the trusts. In support of the loss deduction, Fender claims that there was no agreement for the trusts to repurchase the bonds from the bank.[3] Further, Fender contends that although the'plaintiffs owned 50.15% of the bank’s stock when the bonds were repurchased, the plaintiffs lacked sufficient control of the Longview Bank to assure the repurchase of the bonds when the bonds were initially sold to the bank since the plaintiffs then owned less than 50% of the bank’s stock.[4]
This contention is invalid since a transaction may not be bona fide even if the seller does not completely control the buyer as he does in the situation where he owns a majority of the stock.
To divest a sale of its fundamental incident of finality plainly requires a controlled or sympathetic vendee. Such dominion might be . accomplished boldly through contracts or options to repurchase and the creation of fictitious entities or it might be . accomplished through the more subtle tie of affectionate interest found among families and friends, business or otherwise.
DuPont v. Commissioner of Internal Revenue, 3 Cir., 1941, 118 F.2d 544, 545, cert. denied, 314 U.S. 623, 62 S.Ct. 79, 86 L.Ed. 501 (1941). In DuPont v. Commissioner of Internal Revenue, two friends sold each other about the same amount of stock at a loss at the end of the year and repurchased the stock from one another at the start of the next year. Both sales were for the fair market value of the stock. Although the friends had no legal obligation to repurchase the stock, the court concluded that sufficient dominion existed to assure repurchase and thus to prevent a bona fide sale. See id. Another court denied a loss deduction to a taxpayer who sold and repurchased stock from one of his employees. See Rand v. Helvering, 8 Cir., 1935, 77 F.2d 450.
The circumstances of this case demonstrate that the taxpayers had sufficient influence over the Longview Bank to remove any substantial risk that the trusts would be unable to repurchase the Bender Bonds and thus eliminate the apparent loss on the •sale to the bank. The taxpayers then controlled 40.7% of the bank’s stock, the largest single block of stock. In addition, Fender had greatly assisted the bank recently in dealing with a series of financial difficulties.[5] It appears that Longview Bank would not have agreed to the transaction absent a special relationship with Fender. The Bender Bonds were unrated and were of a maturity that the Longview Bank did not normally purchase. Another bank, Peoples National Bank, where Fender lacked similar influence, had refused to accept the offer to purchase the bonds. Further, since the Bender Bonds were unrated bonds and had limited marketability the Longview Bank would have had difficulty in selling the bonds to a buyer other than the taxpayers. Although the transaction was in the form of a sale to Longview Bank, the trusts allowed the money received from the sale to remain deposited in the Longview Bank until the bonds were repurchased. Finally, Norman Taylor, President of the Longview Bank at that time, in his deposition testified that the transaction was an accommodation to Fender and that he understood that the *938 trusts would repurchase the Bender Bonds within ninety days.[6]
Because the taxpayers had sufficient dominion over the Longview Bank to ensure that the apparent loss from the sale of Bender Bonds on December 26 could be recaptured through a repurchase of the bonds, we conclude that the taxpayers did not suffer a real economic loss as is necessary for a deduction under section 165. Accordingly, the judgment of the district court is
REVERSED.

. Each trust initially filed a separate suit but the two actions were consolidated prior to trial.

. Section 165(a) of the Internal Revenue Code reads:
There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

. Fender stated that there was an agreement that the Bender Bonds would not be resold to the trusts within 31 days of the sale. Such an agreement was necessary to prevent a deduction from being disallowed under the provisions of section 1091 of the Internal Revenue Code.

. If the taxpayer had controlled more than 50% of the bank’s stock, a deduction would automatically be disallowed as a sale to a related party. I.R.C. § 267(a)(1), (b)(2). However, section 267 is not an exclusive condition for denying a deduction. A deduction is also disallowed for any transaction which is not bona fide “even though section 267 does not apply to the transaction.” Treas.Reg. 1.267(l)-l(c).

. The Longview Bank had been the victim of embezzlement and was being investigated by state and federal banking authorities. Fender testified that the bank was in need of additional capital, surplus, earnings and liquidity.

. The testimony of Norman Taylor, president of the bank and the only disinterested witness, indicates that an agreement to repurchase existed although the time and price for the repurchase was not fixed. Taylor testified in part:
A: . . .1 just remember that I handled the bonds as more or less a warehouse — I call it that; you may have a different term— for Mr. Fender as a bond salesman to be held for — picked up by the trust at a later date. (Tr. 151)