THEODORE ROSENFELD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rosenfeld v. Commissioner
Docket No. 6868-77.
United States Tax Court
T.C. Memo 1981-712; 1981 Tax Ct. Memo LEXIS 31; 43 T.C.M. (CCH) 111; T.C.M. (RIA) 81712; December 17, 1981. Theodore Rosenfeld, pro se. Barry C. Feldman, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge Francis J. Cantrel pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and General Order No. 6 of this Court, 69 T.C. XV. [2] After a review of the record, we agree with and adopt his opinion which is set forth below. *32 OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1973 in the amount of $ 12,553.32. A concession having been made by petitioner, the sole issue for decision is whether he incurred a deductible theft loss of $ 23,900 in 1973 under section 165. FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided at 785 Fifth Avenue, New York, New York, at the time he filed his petition. He filed his individual Federal income tax return for 1973 as "married filing separately" with the office of the District Director, Internal Revenue Service, at Manhattan, New York. On that return petitioner, who at all times pertinent to this proceeding performed services as a stockbroker as a member of the firm of Bear Stearns and Company, reported an adjusted gross income of $ 136,576 from wages, dividends, interest, capital gains, and partnership income. His claimed itemized deductions of $ 106,746 included a claimed theft loss of $ 23,900. In early 1971 petitioner and his then *33 wife took a world cruise on the Steamship Rotterdam of the Holland American Line. The steamship embarked from and returned to New York City. While at port in Durban, South Africa, petitioner was attracted to and desired to purchase 16 Japanese ivory figurines. The figurines were considered Chinese-type art [3] and were subject to the 1970 Foreign Assets Control Regulations [4] promulgated under the Trading-With-The-Enemy Act. The regulations prohibited the unlicensed importation of Chinese-type art by requiring travelers, upon reentry into the United States, to declare such items to custom inspectors and pay a duty on them. If an art object was considered an antique, it would be detained and a National Import Specialist would be asked to inspect it. During March 1971 petitioner was, for a time, in the British Crown Colony of Hong Kong. While there, and immediately prior thereto, he drew 11 checks on his personal checking account, all *34 made payable to cash which totalled, in the aggregate, $ 56,880. One of those checks dated March 9, 1971, is in the amount of $ 30,000. The cash so obtained was used for living expenses while in Hong Kong and paying sizeable expenses relating to the cruise, such as paying bills on the steamship, purchasing gifts for friends as well as mementos for himself. The following is a synopsis of petitioner's description of his claimed purchase of the 16 figurines and reentry into the United States with said figurines: While in Durban, South Africa, he negotiated the purchase of 16 Japanese ivory figurines for $ 24,000. The dealer, who represented the figurines to be authentic antiques and whom petitioner had never met before, allowed petitioner to take possession of the figurines without payment of the purchase price or the giving of any security. Petitioner took the figurines to Hong Kong, where the dealer later met him, at which time petitioner paid the negotiated purchase price of $ 24,000 in cash, which was part of the proceeds from the $ 30,000 check. The dealer, upon payment, give petitioner a bill of sale and a certificate of antiquity. [5] Upon returning to the United States, *35 petitioner made no customs declaration with respect to the 16 figurines. He spoke to the customs agent, showed him the figurines, and told him they were antiques and was advised that he did not have to file a declaration. Mr. Paul Tutone, respondent's witness, has been employed by the U.S. Customs Service for 32 years, the last 17 of which were as a National Import Specialist for antiques and art. As such, he is familiar with the regulations concerning the importation of antiques and the procedures used when antiques are brought into the United States. The following is a synopsis of his description of what governs the importation of antiques and the customs procedures utilized with respect thereto: The importation of antiques is governed by the 1970 Foreign Assets Control Regulations. All travelers on arriving in the United States are required to fill *36 out a personal declaration listing all of their purchases abroad, whether antique or not. Articles declared to be antiques would be detained at Customs as foreign assets. Customs inspectors are fully trained and qualified to make determinations on value generally, but they are not qualified to make a value decision on antiques of any sizeable value. In the latter event, a National Import Specialist is called in. Petitioner claims that, after reentering the United States, he placed the figurines in his New York City apartment; that they were stolen in 1973; and the theft was reported to the police by his then wife, [6] Florence Rosenfeld. Petitioner, on his 1973 return, reported a theft loss of $ 24,000 and, after subtracting the $ 100 floor, claimed a deduction of $ 23,900. In the notice of deficiency respondent disallowed the claimed loss in its entirety. Respondent contends *37 that petitioner is not entitled to the claimed loss on several grounds, interalia, that he has failed to establish that he purchased the 16 figurines. OPINION Deductions are a matter of legislative grace, and the taxpayer has the burden of establishing that he is entitled to the claimed deductions. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practive and Procedure.
"Basic in the law is the requirement that to support a deduction for loss of property, the claimant must have been the owner of the property at the critical time." Draper v. Commissioner, 15 T.C. 135 (1950). [7] "* * * evidence adduced by a taxpayer, even though uncontradicted, does not necessarily operate to overcome the presumption in favor of the Commissioner. Sharwell v. C.I.R., 419 F.2d 1057 (6th Cir. 1969); 9 Mertens, Law of Federal Income Taxation, section 50.61 (1965). At most it raises a factual issue. Wood v. C.I.R., 338 F.2d 602 (9th Cir. 1964). * * *." Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971). *38 The events respecting the purchase of the figurines and their entry into the United States could have happened just as petitioner described them, but we are not persuaded that they did. The story that petitioner relates to us verges on the incredible and would require more than his testimony coupled with the cashing of the $ 30,000 check to convince us of its full truth. First, he would have us believe that a dealer in South Africa, who had never seen petitioner (a U.S. citizen) before would allow him to take possession of a $ 24,000 set of antique figurines and transport them to Hong Kong without any payment thereon or the giving of any security. Second, he did not produce either the purported bill of sale or the certificate of antiquity. We think it significant that petitioner, who received his notice of deficiency on or about March 31, 1977, [8] made absolutely no attempt to reconstruct his purchase of the figurines. See Capalbo v. Commissioner, T.C. Memo. 1977-412. Third, we find it unbelievable that petitioner, an intelligent stockbroker, cannot remember the name of the dealer from whom he purportedly purchased an extremely valuable antique figurine set *39 eight years before trial. Other than petitioner's self-serving testimony, there is no probative evidence in this record showing that the figurine set ever existed. Moreover, Mr. Tutone's testimony, which is unrefuted in this record, categorically contradicts petitioner's testimony concerning what happened with respect to the figurines at Customs. Indeed, he testified, "It's inconceivable that any Customs Inspector who is told that these pieces were worth $ 24,000.00 would permit them to come through without a personal declaration, whether they were passed duty-free or not." But "the court [U.S. Tax Court] is not bound to accept testimony at face value even when it is uncontroverted if it is improbable, unreasonable or questionable". Archer v. Commissioner, 227 F.2d 270, 273 (5th Cir., 1955); Commissioner of Internal Revenue v. Smith, 285 F.2d 91, 96 (5th Cir., 1960). The emphasis is on credibility. Thus, "Where under the record the court can fairly say that, because of interest of the witnesses or improbability of the testimony, the witnesses' testimony is not entitled *40 to credit, the testimony may be disregarded." Cullers v. Commissioner, 237 F.2d 611, 615 (8 Cir., 1956); Weiss v. Commissioner, 221 F.2d 152, 156 (8 Cir., 1955); Rand v. Helvering, 77 F.2d 450, 451 (8 Cir., 1935). Banks v. Commissioner, 322 F.2d 530, 537 (8th Cir. 1963). On this record, petitioner's proof of ownership of the antiques is woefully deficient. He simply has not established the ownership thereof. In accord with the foregoing, [9]
Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to General Order No. 6, dated March 8, 1978, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.
3. Chiese-type refers to items which are typically and principally used by Chinese or which are prepared, processed, or designed in the Chinese manner. ↩
4. 31 CFR 500.204↩. These regulations were in effect in 1971.
5. The bill of sale and the certificate were not introduced into evidence. Petitioner testified that he had moved some eight years ago (1971) and was unable to find them. Moreover, he could not remember the name of the dealer from whom he purchased the figurines and, therefore, was unable to obtain a duplicate bill of sale.↩
6. The police report is not in the record. However, a "Verification of Lost or Stolen Property" is in the record which indicates a theft was reported on October 18, 1973. We observe that the figurines reported stolen were valued at $ 250,000. Petitioner's former wife did not testify at the trial.↩
7. See also Hyde v. Commissioner, T.C. Memo. 1981-480; White v. Commissioner, T.C. Memo. 1981-220; Shiers v. Commissioner, T.C. Memo. 1976-37↩.
8. Which date was almost two years prior to the date this case was tried.↩
9. In view of our disposition of this case, it is unnecessary for us to address whether a theft occurred or the value of the purported antique set or petitioner's basis therein.↩