**David M. WINCK, Jr., Petitioner,**

v.

**Richard DANZIG, Secretary of the Navy, et al. Defendants.**

Civil Action No. 01–A–216–N.

United States District Court,
M,D. Alabama,
Northern Division.

June 11, 2001.

Daniel G. Sayers, Mobile, AL, for plaintiff.

R. Randolph Neeley, U.S. Attorney's Office, Montgomery, Christine L. Luster, Office of the Judge Advocate General, Department of the Navy, Washington Navy Yard, DC, Patricia N. Beyer, U.S. Attorney's Office, Southern District of Alabama, Mobile, AL, for defendants.

### *MEMORANDUM OPINION*

ALBRITTON, Chief Judge.

This matter comes before the court on a request for dismissal filed by Defendants

Richard Danzig, the Secretary of the Navy, Captain K.R. Zimmerman, Captain C.I. Hanson, Lieutenant Julian E. Sallas, Janet Reno, and Don Foster (collectively the "Defendants") on April 30, 2001 (doc. # 27).

Pursuant to 28 U.S.C. § 2241, Petitioner David M. Winck, Jr. ("Winck") filed this Complaint for Writ of Habeas Corpus in the United States District Court for the Southern District of Alabama on December 4, 2000. A district court judge for the Southern District of Alabama by order dated February 15, 2001, transferred Petitioner's case to the United States District Court for the Middle District of Alabama because it determined that the Southern District lacked jurisdiction over the petition and that the Middle District had jurisdiction over the petition. Defendants argue that the court should dismiss the petition for lack of jurisdiction, and in the alternative, argue that the court should dismiss the petition for failure to state a cognizable claim. For the reasons to be stated, Defendants' request for dismissal based on lack of jurisdiction is due to be granted.

## I. BACKGROUND

On June 18, 1999, in Montgomery, Alabama, Winck executed an enlistment contract entering the United States Naval Reserve in the Nuclear Propulsion Officer Candidate ("NUPOC") Program. Along with executing the enlistment contract, Winck also signed the NUPOC Program Service Agreement. Upon executing these agreements, Winck began receiving monetary compensation in the amount of $1449.39 each month until his graduation from the University of Alabama. While attending the University of Alabama, Winck was under the command of the Navy Recruiting District in Montgomery, Alabama. (Govt.Exh. 1).

In May of 2000, Winck received orders directing him to detach from duty under instruction, and to report to Student Officer Candidate School ("OCS") located in Pensacola, Florida. The orders provided that Winck "is directed to detach in June 00 DUINS with NAVCRUITDIST Montgomery and report to Commander, Naval Aviation Schools Command, Pensacola, Fl ... for 13 weeks temporary duty under instruction." (Govt.Exh. 6). Winck reported to OCS on June 25, 2000. While attending OCS, but before accepting a commission in the Navy, Winck requested that he be discharged from the Navy pursuant to his enlistment contract. Captain Zimmerman, Winck's commander in Pensacola, Florida, informed Winck that he was obligated under his service agreements to serve in enlisted status for two years because Winck voluntarily disenrolled from OCS for reasons other than physical disability.

Upon Winck's disenrollment from OCS, the Navy transferred Winck to the Recruit Training Depot, Great Lakes, Illinois for temporary duty commencing on December 12, 2000. The orders also provided that Winck ultimately report to the USS Hue City Navy Base Mayport, Florida for permanent duty by January 1, 2001. On December 4, 2000, Winck filed this petition for writ of habeas corpus seeking release from active duty. On December 28, 2000, Winck completed his assignment in Great Lakes, and reported to the USS Hue City Navy Base where he is currently stationed.

## II. DISCUSSION

Defendants assert that this court lacks jurisdiction over this habeas petition because Winck's custodian, his commanding officer, is not and has never been within the territorial jurisdiction of the Middle District of Alabama. Alternatively, Defen-

dants assert that Winck has failed to state a cognizable claim. Prior to addressing the merits of the jurisdictional issue, the court must first address Winck's argument that based on the law of the case doctrine, the court must adhere to the transferring court's decision that the Middle District of Alabama has jurisdiction over this habeas corpus petition.[1]

### A. Law of the Case

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citing cases). Because of the possibility of forcing a transferred case into perpetual litigation by playing "jurisdictional ping-pong," the law of the case doctrine applies "with even greater force to transfer decisions than to decisions of substantive law." *Id.* "Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Id.* at 819, 108 S.Ct. 2166. The law of the case doctrine, however, does not shield an incorrect jurisdictional decision. *Id.* If a transferee court concludes that the prior jurisdictional decision was "clearly wrong," then the transferee court is obliged to decline jurisdiction. *Id.* at 817, 108 S.Ct. 2166; *see also Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) ("The law of the case will be disregarded only when the court has a clear conviction of error with respect to a point

of law on which its previous decision was predicated."); *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981) ("The law of the case will be disregarded only when the court has a clear conviction of error."). Accordingly, the court must accept the transferring court's decision unless the court finds that its decision was "clearly wrong." The court will now address the basis for jurisdiction in this case.

### B. Jurisdiction

Federal courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). While habeas corpus relief generally applies to "prisoners," § 2241 includes "members of the armed services who have been unlawfully detained, restrained, or confined." *Schlanger v. Seamans*, 401 U.S. 487, 489, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971). Even if a petitioner is "in custody" in the sense that he is subject to military orders and control, the absence of his custodian—his commanding officer—from the jurisdiction of the district court is fatal to that court's jurisdiction of the habeas corpus petition. *Id.* at 491, 91 S.Ct. 995. A federal district court lacks jurisdiction where a petitioner's commanding officer is neither a resident of the district in which the court sits nor is amenable to its process. *Id.* at 489–91, 91 S.Ct. 995. Whether the court has jurisdiction over the custodian—the petitioner's commanding officer—is determined at the time the petition is filed. *Smith v. Campbell*, 450 F.2d 829, 831–33 (9th Cir.1971); *see also McClure v. Hopper*, 577 F.2d 938, 939–40 (5th Cir.1978) ("Jurisdiction attached upon the initial filing for habeas corpus relief. It was not destroyed upon the transfer of

---

**1.** The court recognizes that Winck describes this doctrine as res judicata. The defense is better characterized as law of the case.

petitioner and accompanying custodial change.").

The question presented in this case is whether at the time Winck filed this petition Winck's commanding officer was within the territorial limits of the court. The transferring court determined that Winck's commanding officer at the time he filed his petition was the commanding officer of the Navy Recruiting District in Montgomery, Alabama. In making this determination, the transferring court accepted Winck's argument that at the time he filed his petition, he was under the authority of the commanding officer in Montgomery because his last permanent duty station was in Montgomery. Defendants assert that Winck's commanding officer at the time he filed his petition was not in Montgomery, but in Great Lakes, Illinois. The court agrees with Defendants that the transferring court clearly erred in finding that at the time Winck filed his petition, his commanding officer was located in Montgomery.

In reaching this decision, the court first recognizes that the transferring court and Winck misconstrue the test for determining who is a serviceman's commanding officer. The proper focus is not based on labels such as temporary or permanent duty. Rather, the correct analysis is which commander had control over Winck when he filed his petition. Cf. Strait v. Laird, 406 U.S. 341, 345, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972) ("Quite unlike a commanding officer who is responsible for the day to day control of his subordinates, the commanding officer of the Center is the head of a basically administrative organization that merely keeps the records of unattached reservists. To give the commanding officer of the Center 'custody' of the thousands of reservists throughout the United States and to hold at the same time that the commanding officer is present for habeas corpus purposes only within one small geographical area is to ignore reality.") (quoting Arlen v. Laird, 451 F.2d 684, 687 (2d Cir.1971)).

The Supreme Court illustrated this difference in Schlanger. In Schlanger, a serviceman on active duty in the Air Force was on temporary assignment in Arizona at Arizona State University for study. 401 U.S. at 488, 91 S.Ct. 995. The serviceman's permanent duty station was in Georgia. Id. The serviceman filed his petition in Arizona alleging that he was being detained unlawfully. Id. In determining whether the district court had jurisdiction, the Court did not rest its decision as to who was the serviceman's commanding officer based on where was the serviceman's last permanent duty station. Id. at 488–89, 91 S.Ct. 995. Instead, the Court held that a serviceman's commanding officer is the person within the military who has control over the serviceman. Id. at 489, 91 S.Ct. 995.

In applying this test, the Court rejected the serviceman's argument that the commanding officer assigned to the Arizona State campus was the serviceman's commander because this commanding officer "had no control over the petitioner who was concededly not in his chain of command." Id. at 488–89, 91 S.Ct. 995. The Court held that the petitioner was subject to the control of the Commander of Moody AFB in Georgia because petitioner was subject to his orders and directions. Id. at 489, 91 S.Ct. 995. Consistent with this approach that control is the deciding factor, the Court also recognized that had the serviceman been under the command of the commander assigned to Arizona State, the court would have a different question. Id. at 491–92, 91 S.Ct. 995. Accordingly, the court finds that the transferring court clearly erred by basing its decision simply on who Winck's commanding officer was at his last permanent duty station, regardless

of whether that commander retained any control over Winck at the time Winck filed his petition.

The court now must address which commanding officer had control over Winck at the time he filed his petition. At the time Winck filed his petition, the record clearly shows that Winck was not under the control of the commanding officer in Montgomery, Alabama. In May of 2000, Winck received orders to detach from the Recruit Training Depot in Montgomery, Alabama, and to report to the Commander of the Naval Aviation Schools Command in Pensacola, Florida by June 24, 2000, for 13 weeks of temporary duty. (Govt. Exh .6). When Winck reported to Captain Zimmerman, the commander in Pensacola, Florida, any control the commanding officer in Montgomery, Alabama had over Winck ended and their relationship was terminated. Montgomery was Winck's prior command and Pensacola was Winck's current command. Winck even acknowledged on his student enrollment card for Pensacola that Montgomery was his prior command. (Govt.Exh. 7). At this point, Winck was subject to the orders and directions of Captain Zimmerman. Thus, Captain Zimmerman was Winck's commanding officer.[2]

This finding is not altered by the fact that Winck was assigned to Captain Zimmerman's command for temporary duty. Pensacola was not a way station, or collecting point, or transportation center where servicemen gather for transportation to other bases. It was a duty station for 13 weeks where Winck received substantial training and experience for his next duty.

In addition, by the time Winck filed his habeas petition on December 4, 2000, Winck had received further orders that clearly indicated that he would not return to Montgomery. After Winck completed his temporary duty at Pensacola, he received orders directing him to report to Great Falls, Illinois by December 12, 2000, for temporary duty and then directed him to report to the USS Hue City in Mayport, Florida for permanent duty. (Govt.Exh. 8). At the time Winck filed this petition, the record clearly establishes that Winck was not under the control of the commanding officer in Montgomery, Alabama, because such control was terminated when Winck was transferred to Pensacola.[3]

Moreover, the court's finding is supported by the Ninth Circuit's decision in a factually similar case. In *Sholars v. Matter*, 491 F.2d 279 (9th Cir.1974), Scholars, a serviceman, sought a writ of habeas corpus in the Northern District of California on the grounds that he was illegally denied a conscientious objector discharge from the United States Navy. *Id.* at 280. Scholars had attended post-graduate school at the University of California, Berkeley, which is located in the Northern District of California. *Id.* His commanding officer while attending Berkeley was Rear Admiral Matter. *Id.* After graduation, Scholars received orders to attend a nine-week school at Port Hueneme, California, and then proceed to his permanent duty station in Guam. *Id.* Port Hueneme is not located within the Northern District of California. *Id.* at 281 n .8. Scholars completed the nine-week school, but instead of

---

**2.** The court also notes that Winck has produced no evidence to show that the commanding officer in Montgomery retained any control over Winck after Winck reported to Pensacola.

**3.** Because Winck was between duty stations when he filed his petition, the court faces the question of whether Winck was under the command of the commanding officer of Pensacola or Great Falls at the time Winck filed his petition. The court need not answer this question because neither command is in the territorial jurisdiction of the Middle District of Alabama.

reporting for transportation to Guam, Scholars filed the writ in the district court for the Northern District of California. *Id.* at 281. Scholars argued that the district court had jurisdiction over his writ because his last permanent duty station commander, Admiral Matter, was located within the district. *Id.* The court rejected Scholars argument because whatever control Admiral Matter had over Scholars ended when Scholars was detached from Admiral Matter's unit some three months prior to the filing of Scholars's petition. *Id.* at 281.

Similarly, whatever control the commanding officer in Montgomery had over Winck ended when Winck was detached some six months prior to the filing of Winck's petition. The court finds that at the time Winck filed his petition his commanding officer clearly was not within the Middle District of Alabama. Therefore, the court lacks jurisdiction to entertain the merits of Winck's habeas petition, and Defendants' request for dismissal is due to be granted.

### III. *CONCLUSION*

The court finds that it lacks jurisdiction over Winck's habeas petition because Winck's custodian was not located within the Middle District of Alabama at the time Winck filed his petition. Thus, Defendants' request for dismissal is due to be granted.